Fʀᴇᴅ S. Sᴍɪᴛʜ, Administrator of the Estate of
John P. Phelps, Jr., Deceased, Appellant,

*v.*

Lᴇɴᴀ B. Pʜᴇʟᴘs, Appellee.

403 S.W.2d 747.

(*Jackson,* April Term, 1966.)

Opinion filed May 20, 1966.

ROBINSON, FISHER & AVERY, Memphis, for appellant.

JAMES B. JALENAK, Memphis, HANOVER, HANOVER, HANOVER, WALSH & BARNES, Memphis, of counsel, for appellee.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

John P. Phelps, Jr., Deceased, and his wife, Lena B. Phelps, were divorced on October 22, 1957, in the Circuit Court of Shelby County.

The divorce decree granted the wife an absolute divorce and alimony.

It appears from the record the parties entered into an oral agreement prior to the divorce which was adopted and incorporated into the decree granting the divorce. We quote the pertinent parts of the decree:

"And it further appearing to the court that the parties have entered into an agreement providing for the payment of Attorney fees, affecting their property rights, and the alimony rights of the complainant, under the terms of which John Phelps agreed to convey to Lena Phelps the house and land at 4602 Flamingo Road, Memphis, Tennessee, together with the contents therein, upon condition that he get out of the house his personal effects and the chair given him by the complainant, also the long bed, which will be replaced by one of standard size to match her furniture; that John Phelps will pay the mortgage loan on the home at 4602 Flamingo Road, as aforesaid, and will pay to the complainant the sum of $50.00 per month for ten years, beginning November 1, 1957, or for so long as she remains unmarried; and shall cease upon her remarriage sooner than ten years; that in the event the complainant, Lena Phelps, refinances or sells the said home, the defendant, John P. Phelps, will pay to her a sum equivalent to the then unpaid balance on the property, in monthly sums of not less than $100.00 per month; that John Phelps will pay for the sidewalks which are to be laid on two sides of the home located at 4602 Flamingo Road, Memphis, Tennessee, and that John Phelps will pay to Mrs. Virgina Newman, Attorney, an additional $200.00 as fee, in addition to the $50.00 fee heretofore awarded her, and which has been paid;

that the said $50.00 payments hereinabove set out will be paid during the lifetime of Lena Phelps, and will not continue therafter; that in the event of the death of the defendant, John Phelps, before these payments on the house can be executed, a lien secured by a trust deed shall be given by the said John P. Phelps to Lena Phelps on 1783 Nelson, to secure the said payments; provided that, should the said John P. Phelps obtain an irrevocable insurance policy on his life to guarantee said payments, on which he is to pay the premiums, then in that event, upon obtaining said insurance policy and the delivery of the same to Lena Phelps, the trust deed given on 1783 Nelson shall be promptly released; that in consideration of said agreement, Lena Phelps, complainant herein, waives all rights of support, homestead, dower, year's support, inheritance, and all other rights arising from the marital relationship, and the complainant assumes all personal existing debts of her own, and that said agreement may be incorporated in the decree of divorce, should a divorce be granted, and the settlement approved by the court;

\* \* \* \* \* \* \* \*

"It is further ordered, adjudged, and decreed that all of the terms and provisions of the said agreement, with reference to alimony, fees of Attorney, and the property rights of the parties, be, and the same are in all things approved, and made a part of this decree, as if specifically decreed by this court in each and every instance, and subject to the enforcement and the further orders of this court."

John P. Phelps, Jr., died on February 11, 1965. At the date of his death he was current in the alimony payments, except for the payment due on February 1, 1965.

Prior to his death, Deceased procured an irrevocable insurance policy on his life to guarantee the payment of the mortgage on the home he had conveyed to Lena Phelps and obtained a court order requiring her to release the deed of trust on his separate real estate.

Lena B. Phelps filed a claim against his estate for $1,650.00, the amount to become due on all alimony payments after February 1, 1965, for the balance of the ten year period.

The Administrator filed exceptions to the claim.

It was stipulated at the hearing on the exceptions that Lena B. Phelps was alive and unmarried at the time of her former husband's death and also at the date of the hearing on December 17, 1965.

The trial judge overruled the exceptions and allowed the claim. He ordered the claim to be paid in monthly installments of $50.00 each for the remaining ten year period, or until the remarriage, or death, of claimant.

The Administrator has perfected an appeal to this Court and assigned as error the following:

"The Court erred in allowing the claim for installments of alimony accruing after the date of death of decedent.

"The Court erred in failing to hold that the decree of divorce, containing no express language or manifest intention to bind the estate of the obligor, was presumed to terminate the obligation of alimony at his death.

"The Court erred in failing to hold that a decree of divorce which calls for future alimony payments, being

subject to modification by its own terms, as well as by statute, is therefore not binding on the estate of the deceased former husband.

"The Court erred in failing to hold that the separation agreement of the parties, adopted by the Court in its decree, clearly manifested an intention not to bind the estate of the deceased for future alimony payments, where in another part of the agreement and the decree, the deceased had obligated himself to make future payments on the claimant's home mortgage, and to obtain a life insurance policy for the payment of any balance due at his death, and further to grant her a mortgage on his own property until the life insurance was obtained."

The general rule in this State is a decree providing for monthly payments of alimony are abated or terminated upon the death of the husband in the absence of some stipulation in the order which would require payments after death. *Brandon v. Brandon,* 175 Tenn. 463, 135 S.W.2d 929 (1940); *In Re Kerby's Estate,* 49 Tenn. App. 329, 354 S.W.2d 814 (1961); *In Re Moore's Estate,* 34 Tenn.App. 131, 234 S.W.2d 847 (1949).

In the case of *In Re Kerby's Estate,* supra, an opinion written by Judge Humphreys, certiorari denied by this Court, it was said:

"There is a rule that, where wife or child support payments are represented by contract, and the divorce decree recognizes the existence of the agreement, and pronounces judgment so to speak thereon, such payment provisions survive. The claimant invokes this rule and cites *In Re Flicker v. Chenitz,* 55 N.J. Super. 273,

150 A.2d 688; *In Re Fredenthal['s Estate]*, 25 Misc.2d 1068, 206 N.Y.S.2d 194; *In Re Estate of Howe,* 15 Misc. 2d 1044, 183 N.Y.S.2d 156; *In Re Silver's Estate,* 24 Misc.2d 939, 201 N.Y.S.2d 415; *Simpson v. Simpson,* Fla.App., 108 So.2d 632. These cases simply apply the principle that contract obligations survive as claims against the estate of a decedent whether integrated in a decree or not.''

In 24 Am.Jur.(2d), Divorce and Separation, Section 911, page 1036, it says:

''An agreement to make payments for the support of a wife 'during her life,' or 'until her death,' or 'until her death or remarriage,' is sufficient to create a continuing obligation which survives the death of the husband where the contract does not contain other provisions manifesting an intent that the payments shall terminate at the husband's death.''

In 27A C.J.S. Divorce sec. 240, page 1158, it is said:

''It is generally held that the husband may, by agreement, bind his estate for the payment of alimony to the wife after his death or during her life, and this applies to agreements incorporated in the decree, but the rule was not applied in the case of a parol agreement made before, and not incorporated in, the decree.''

See also *In Re Moore's Estate,* supra, 34 Tenn.App. at page 148, 234 S.W.2d 847.

The decree plainly states, ''the parties have entered into an agreement providing for the payment of —alimony—under the terms of which John Phelps agreed,'' to pay complainant (Lena B. Phelps) $50.00

per month for a period of ten year or until her death or remarriage; and "that said agreement may be incorporated in the decree of divorce, should a divorce be granted, and the settlement approved by the court."

The decree further shows the agreement was approved and made a part of the decree by the court. Thus, the trial court recognized the existence of the agreement, approved it and integrated the contract into the decree with the express approval of the parties.

This being true, it is our opinion the obligation of Phelps to pay the stipulated amount for ten years, or until Mrs. Phelps' death or remarriage, survived his death; neither of the terminating contingencies having occurred during his life.

■ It is true the Deceased could have sought a modification of the decree during his lifetime. *Osborne v. Osborne,* 29 Tenn.App. 463, 197 S.W.2d 234 (1946). The record shows, however, he did not choose to do so but instead kept his payments current, which indicates to us he intended to carry out the agreement.

Moreover, the Administrator did not seek a modification of the divorce decree.

Thus, the decree remains final. *Hicks v. Hicks, et al.,* 26 Tenn.App. 641, 176 S.W.2d 371 (1943); *Damron v. Damron,* 121 Tenn. 14, 367 S.W.2d 476 (1963).

■ We see no merit in appellant's fourth assignment of error for the reason the policy of life insurance was specifically acquired for the purpose of securing the payment of the mortgage on the home conveyed to Mrs. Phelps. The alimony payments which were to continue

for ten years, or until her death or remarriage, were, therefore, to be made separate and apart from the mortgage payments. There is nothing in the record from which it may be inferred the insurance policy was to cover anything more than the mortgage payments.

All assignments are overruled and the judgment of the Probate Court is affirmed with costs.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CRESON, JUSTICES, concur.