Marrell Wright EDWARDS, Administratrix, C.T.A. the Estate of Henry Thomas Edwards, Deceased, Appellant,

v.

Janie Lee (Stiles) EDWARDS, Appellee.

Supreme Court of Tennessee, at Nashville.

June 16, 1986.

Clark H. Tidwell, Nashville, for appellant.

Lucien Dale, Nashville, for appellee.

## OPINION

ALLEN R. CORNELIUS, Jr., Special Justice.

Marrell Wright Edwards, the administratrix of the estate of Henry Thomas Edwards, has been granted permission to appeal from an opinion of the Court of Appeals. The administratrix presents one issue: are bank accounts owned by her and her late husband as tenants by the entirety subject to the alimony claim of the ex-spouse as a creditor?

The issue evolved from the divorce proceeding between Henry Edwards and his first wife, Janie Edwards. Upon Henry Edwards' death the proceedings were revived by substitution of his administratrix, Marrell Edwards, his widow, as a party to the lawsuit. No issue is raised by either party as to the timely filing of a claim against the estate. *See* T.C.A. § 30–2–307. The presumption is that the notice of claim was timely filed.

For reasons hereafter set forth, the opinion of the Court of Appeals is reversed and this cause is remanded to the trial court with instructions.

## THE DIVORCE

After thirty-seven years of marriage, Henry Edwards sued Janie Edwards for a divorce. His petition was filed on November 23, 1973 and on December 4, 1973 Janie Edwards filed a counter complaint. On October 30, 1974, the Circuit Court for Davidson County entered a decree which granted Janie Edwards an absolute divorce. The decree contained a property settlement agreement between the parties. The decree, per the agreement, made the following provision for alimony:

8. It is further agreed between the parties that the Wife shall receive from the Husband, as continuing alimony, $400.00 per month and that said payment shall be made by the Husband on a monthly basis, and shall be paid on the first day of every month after the entry of the final divorce decree herein, and said payment shall continue on the first of every month

for as long as the Wife lives or until she remarries, and, in that event, the alimony payments shall cease. Provided that the parties further agree that the matter of alimony remains before the Court for an equitable amount to be set in the event changes in circumstances occur.

Additionally, Janie Edwards was awarded their residence in Davidson County and Henry Edwards was ordered to pay off the mortgage within a specified period. He was awarded their cottage in Wilson County, including the personal property pertaining to its use. He retained his retirement benefits which he had accumulated in his employment, and his stock in the Tennessee Valley Electric Supply Company and Southern Sales Company.

## POST DIVORCE EVENTS

On October 20, 1974, Henry Edwards married Marrell Edwards who, per interrogatories, had a net worth of one hundred twenty-five thousand ($125,000.00) dollars. She co-signed Henry Edwards' note that he might pay the mortgage on Janie Edwards' home. In turn, she was deeded a one-half undivided interest in the Wilson County property.

In 1980, Henry Edwards retired. He petitioned the Circuit Court to reduce his alimony payments. Following a hearing, the monthly payments were reduced to three hundred ($300.00) dollars. This decree provided that: "either party retains the right to come into court upon a substantial financial change of circumstances in order to modify the decree of alimony as heretofore ordered by the court."

Henry Edwards died on June 9, 1983. He was current in his alimony payments. His widow, Marrell Edwards, was appointed administratrix, C.T.A. of his estate. These proceedings are pending in the Probate Court of Williamson County.

Following the substitution of Marrell Edwards, as administratrix, and the revival of this divorce action, Janie Edwards petitioned for an order: (1) requiring the estate to pay her alimony since June, 1983; (2) increasing the amount of the monthly alimony payments to four hundred ($400.00) dollars; and (3) declaring certain conveyances between Henry Edwards and his second wife to be fraudulent conveyances in violation of T.C.A. § 66–3–301 through § 66–3–314. The administratrix petitioned the trial court to terminate the obligation to pay alimony by reason of the death of Henry Edwards.

## THE RULING OF THE CIRCUIT COURT

The trial court, relying upon the answers to the interrogatories, affidavits and documents contained in the record, undertook to finalize this litigation. In an order entered February 14, 1984, the trial court determined: (1) Janie Edwards was entitled to alimony in the amount of three hundred ($300.00) dollars a month from July 1, 1983 through January 31, 1985; (2) there was a sufficient change in circumstances to justify the termination of alimony after January 31, 1985; and (3) Henry Edwards did not transfer any of his assets in violation of the Uniform Fraudulent Conveyance Act, T.C.A. § 66–3–301 through § 66–3–314. Janie Edwards appealed this decision to the Court of Appeals.

## OPINION OF COURT OF APPEALS

The Court of Appeals determined: (1) that Henry Edwards' obligation to pay alimony to Janie Edwards was not extinguished by his death; (2) certain bank accounts held by Henry Edwards and his second wife violated T.C.A. § 66–3–305 and were, by the terms of the statute, fraudulently conveyed when these funds became the sole property of Marrell Edwards upon the death of Henry Edwards; (3) T.C.A. § 45–2–703(a), as amended by the Tennessee Legislature, effective April 14, 1983, provided Janie Edwards with the means of gaining access to the bank accounts which had been previously held by Henry and Marrell Edwards; and (4) awarded Janie Edwards twenty-one hundred ($2,100.00) dollars as past due alimony, to the date of its opinion, plus thirty-six thousand ($36,-

000.00) dollars as alimony *in solido* in lieu of the alimony *in futuro* which had been granted under the decree of 1974 and as modified in 1980. Marrell Edwards, as administratrix, petitioned this Court for permission to appeal and permission was granted.

## THE FINDINGS OF THIS COURT

### I

■ Both the trial court and the Court of Appeals concluded that Janie Edwards was entitled, as a creditor, to the continuation of her monthly alimony payments from the estate of Henry Edwards. The Court of Appeals noted that both sides conceded this issue. We are not directed to such a concession in the record but accept the fact as correct since such an issue has not been presented in this appeal. This finding is in keeping with this Court's holding in *Smith v. Phelps*, 218 Tenn. 369, 403 S.W.2d 747, 749 (1966). *See also* T.C.A. § 36–5–101(a)(1), (2); and the teachings of *In re Kerby's Estate*, 49 Tenn.App. 329, 354 S.W.2d 814 (1961). To the extent that the finding of fact of the trial court and the Court of Appeals concur, they shall be conclusive upon this Court if there be any evidence to support them. *City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734 (Tenn.1977); T.C.A. § 27–1–113. We, therefore, accept the finding that the provision "as long as the wife lives or until she remarries" was intended to create a binding obligation on Henry Edwards' estate. His death was not one of the required eventualities for the cessation of the payments. *See Smith v. Phelps*, supra; 24 Am.Jur.2d, Divorce and Separation, Section 911 (1966).

■ With the above principles in mind, we reject the trial court's finding that Henry Edwards' death was a change of circumstances requiring the termination of the monthly alimony payments some nineteen months after his death. The original settlement agreement, as well as the modifying decree, addressed only the death or remarriage of Janie Edwards as an event that would terminate the payments.

The Court of Appeals concluded that while Henry Edwards' death had a direct effect on his estate's ability to pay alimony, it had no effect upon Janie Edwards' need for continuing support. Prior to Henry Edwards' death, her annual income was thirty-six hundred ($3,600.00) dollars in alimony payments and thirteen hundred thirteen ($1,313.00) dollars interest from funds she received in the 1974 settlement. The Court of Appeals found that this 70–year-old lady was in need of continuing sustenance. There is no contradictory evidence in this record. As to this we concur.

■ However, the Court of Appeals conjectured that Janie Edwards' continued receipt of alimony payment would be a source of discomfort and friction between the parties. Relying on decisions from two sister states, the Court of Appeals chose to change the alimony award in futuro to alimony in solido. It found Janie Edwards' life expectancy to be approximately 13 years and at the rate of $3,600 per year she would receive a total of forty-six thousand eight hundred ($46,800.00) dollars from Henry Edwards' estate. It determined that the present value of such an award, at ten per cent interest would approximate thirty-six thousand ($36,000.00) dollars. Thus, the Court of Appeals modified the trial court's original award to Janie Edwards to provide that she be paid thirty-eight thousand one hundred ($38,100.00) dollars from the funds remaining in Henry Edwards' separate estate and from the funds remaining in Henry Edwards' bank accounts at the time of his death. The transformation of this alimony obligation from one in futuro to one in solido was error.

Historically, alimony in gross (in solido) has been preferred to periodic (in futuro) alimony in cases of divorce from the bonds of matrimony. But, by statute and case law, alimony in futuro has gained approval in Tennessee. T.C.A. § 36–5–101(a)(1) and (2). *Also see Buchholtz v. Buchholtz*, 175 Tenn. 87, 132 S.W.2d 208, 209 (1939). De-

crees awarding alimony in futuro are valid and enforceable in Tennessee.

Alimony *in solido* becomes final when the decree becomes final. *Spalding v. Spalding,* 597 S.W.2d 739 (1980). Alimony *in futuro* remains in the trial court's control; and, on application of either party, the court may decree an increase or decrease of such allowance on cause being shown. T.C.A. § 36–5–101(a)(1). The inequity of the Court of Appeals' remedy is that after such a judgment became final, Janie Edwards would be free to remarry or providence decreeing, her next of kin could inherit an undeserved sum. Therefore, we hold that Janie Edwards is entitled to claim against the estate of Henry Edwards her past due alimony payments of three hundred ($300.00) dollars per month plus statutory interest. The estate will be obligated to continue such payments until she remarries, dies or the amount is increased or decreased for financial cause.

## II

The administratrix, Marrell Edwards, questions whether bank accounts owned by a married couple as tenants by the entirety may be subjected to the alimony claim of an ex-spouse creditor, thereby nullifying such form of ownership. This question stems from the 1983 amendment to T.C.A. § 45–2–703 relative to bank deposits in two or more names. The amendment became effective April 14, 1983, prior to Henry Edwards' death in June 1983.

Prior to the 1983 amendment, T.C.A. § 45–2–703 read:

When a deposit has been made or shall hereafter be made, in any bank in the names of two (2) or more persons, payable to either, or survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the others be living or not; and the receipt or acquittance of such person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

The 1983 legislature added a second sentence to section (a) which reads:

Any balance so created shall be subject to assignment by, or the claim of any creditor of, either depositor, as if such depositor were the sole owner of the funds; provided, however, that if such creditor realizes its claim, by garnishment, set off, or otherwise, any other depositor may, by appropriate action against the creditor, establish such rights as that depositor may have in the funds.

The limited legislative history indicates that the amendment was a housekeeping response within the commercial banking statutes following this Court's opinion in *Griffin v. Prince,* 632 S.W.2d 532 (Tenn. 1982).

T.C.A. § 45–2–703 is a part of this state's commercial banking code. As pointed out in *Griffin,* this statute does not indicate a legislative intent to abolish any form of bank deposit, especially that of tenancy by the entirety. In fact the 1983 amendment explicitly preserved to "any other" depositor the right to establish, "by appropriate action", as against the third party, such rights as that depositor may have in the funds.

■ We conclude that no substantive change has been made in T.C.A. § 45–2–703 relative to bank accounts created jointly by husband and wife. *Griffin v. Prince,* supra, was not repudiated by the 1983 amendment to T.C.A. § 45–2–703. Procedurally, the amendment relieves the depository bank of responsibility to resist a third party's claim. The burden of establishing the status of the deposit, as one of tenancy by the entirety, has shifted from the bank to the "other" depositor.

## III

Also presented in this appeal is Janie Edwards' insistence that Henry and Marrell Edwards created certain bank accounts for the purpose of placing his assets beyond the reach of her claim for alimony. These accounts, therefore, were fraudulent conveyances in violation of Tennessee's

Uniform Fraudulent Conveyance Act. T.C.A. § 66–3–301 et seq.

The trial court made a finding, on a very limited record, that Henry Edwards did not transfer any of his assets in violation of T.C.A. § 66–3–301 et seq. The Court of Appeals agreed in part and differed in part.

The Court of Appeals reasoned that neither the sale of the TVESCO stock in 1980, the sale of the Wilson County cottage in 1981, nor Mrs. Edwards' receipt of the IRA account in 1983 were fraudulent conveyances within the meaning of T.C.A. § 66–3–305. On the other hand, the Court of Appeals found that the passage of the funds in four joint bank accounts, totaling sixty-seven thousand, five hundred sixty-five ($67,565.00) dollars, to Marrell Edwards upon her husband's death could be set aside if the claims of the creditors are defeated.

We concur only in the finding that neither the stock nor cottage sales were fraudulent by the terms of T.C.A. § 66–3–305. The IRA account will be considered later in this opinion.

■ There is evidence in this record which supports, factually, the trial court's finding that the four bank accounts[1] were not fraudulently conveyed. There is certainly no evidence in the record which contradicts Marrell Edwards' answers to the interrogatories. As joint accounts created by a husband and wife, as a tenancy by the entirety, these accounts are controlled by this court's holding in *Covington v. Murray,* 220 Tenn. 265, 416 S.W.2d 761 (1967). These accounts were not subject to the Uniform Fraudulent Conveyance Act; for it is well settled in this state that the words of a conveyance or legal instrument, which would make two other persons joint tenants under the common law, or tenants in common under T.C.A. § 66–1–107, will create tenancy by the entirety in a husband and wife. *Griffin v. Prince,* supra at 535[6]. *Also see First American National*

*Bank v. Evans,* 220 Tenn. 393, 398, 417 S.W.2d 778 (1967), holding that a tenancy by the entirety may be created in this state in personal property without regard to the source of the property so held; and there is a presumption that they take by the entirety.

We reverse that part of the Court of Appeals' opinion that found the above described conveyance of bank accounts could be set aside if the claims of the creditors are defeated. The Court of Appeals obviously predicated its opinion on an erroneous application of T.C.A. § 45–2–703, as amended, to this Court's holding in *Griffin v. Prince,* supra.

### IV

The final item for consideration is Henry Edwards' individual retirement account. The trial court's order of February 14, 1984 did not specifically mention this account. The fifth item in the order recites only that defendant did not transfer any assets in violation of T.C.A. § 66–3–301 through § 66–3–314. The Court of Appeals considered jointly the sale of the TVESCO stock, the Wilson County cottage and the IRA account. It found that Marrell Edwards had received these proceeds without violation of the fraudulent conveyance act. We agree as to the stock and cottage sales. *See First American National Bank v. Evans,* supra. The IRA presents a much more complex problem than has been addressed.

The United States Congress established IRA accounts as part of the comprehensive Employee Retirement Income Security Act (ERISA) which provides that there will be no alienation or assignment of benefits, 29 U.S.C.A. Section 1056(d)(1). Federal and state courts alike have confronted the problem with respect to benefits. The United States Court of Appeals for the Second Circuit, held in *Cody v. Riecker,* 594 F.2d 314 (2nd Cir.1979), that enforcement of

---

1. (1) First American National Bank, thirty-seven thousand, five hundred ($37,500.00) dollars; (2) Third National Bank, twenty thousand ($20,000.00) dollars; (3) Fidelity Federal Savings and Loan Association, five thousand ($5,000.00) dollars; and (4) First Bankers of Vero Beach, Florida, five thousand ($5,000.00) dollars.

family support orders may be by garnishments of benefits regulated by ERISA. Indeed, an overall congressional intent not to interfere with the state's power to enforce family support obligation may be gleaned from judicial interpretation of exemption provisions in other federal statutes. *See Cartledge v. Miller*, 457 F.Supp. 1146, 1155 (S.D.N.Y.1978). The case of *American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118 (2nd Cir.1979), also carved out an implied exception in furtherance of Congress' concern in ERISA legislation for the well being of employees and their dependents, as follows:

"We reject appellant's proffered statutory construction and believe the more reasonable interpretation to be that a garnishment order used to satisfy court ordered family support payments is impliedly excepted from preempted state law relating 'to any employee benefits plan'.... [at 121]."

Congress expanded the ERISA legislation by establishing the individual retirement account. *See* 26 U.S.C.A., Section 408(a) and (b), Internal Revenue Code. Subsection (a) authorizes the individual retirement account, while (b) provides the individual retirement annuity. Under (a) the account is placed with a trustee bank for the exclusive benefit of the individual, or his beneficiaries. An annuity under (b) is issued by a qualified insurance company. From the exhibits in this record, Edwards' 1040 tax forms, it is clear that we are considering an IRA account as authorized under 408(a).

In *Mallory v. Mallory*, 179 N.J.Super. 556, 432 A.2d 950 (1981), we find the following observation: "The IRA can also be distinguished from most other ERISA pension plans in one further respect. The only funds present in the IRA plan are those of the settlor. The fact that the corpus may be required to be turned over will not affect the funds of strangers but only those of the individual covered by the plan."

■ In response to interrogatories, Marrell Edwards announced that she became the beneficiary of this account upon the death of her husband. Janie Edwards has consistently maintained that the transfer of this fund to Marrell Edwards violated T.C.A. § 66–3–305 in that it prevents the estate from being able to meet its obligation for the payment of the monthly alimony until her death or re-marriage. We agree. Such an insistence, while not argued before the Court of Appeals in this light, is supported, in reference to alimony and child support, by the federal authorities. See comments as to Social Security Act and Railroad Retirement Act in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

The individual retirement account, established by authority of 408(a), has been considered many times by the federal bankruptcy courts. In *In re Gefen*, 35 B.R. 368 (Bkrtcy. S.D.Fla.1984) we find the following:

As previously stated, both of the I.R.A. accounts created by the debtor were established pursuant to subsection (a) of § 408 and were "individual retirement accounts" rather than "individual retirement annuities" as contemplated by subsection (b) of § 408.

[3] Based upon the foregoing, the Court finds that "individual retirement accounts", created in accordance with 26 U.S.C. § 408(a), and held in the form of funds on deposit in a bank account under the complete and unfettered control of the debtor are not "annuity contracts issued to citizens or residents of the state, upon whatever form," and are not unavailable to satisfy the claims of judgment creditors pursuant to Fla.Stat. § 222.14. Hence, the Court is not precluded from reaching the issue of the legal effect of the debtors' allegedly fraudulent transfer of funds from an individual retirement account to an individual retirement annuity. Other bankruptcy courts which have considered whether I.R.A. accounts are exempt under the Bankruptcy Code have reached a similar result. *In re Talbert*, 15 B.R. 536 (Bkrtcy.W.D.La.1981); *In re Howerton*,

21 B.R. 621 (N.D.Tex.1982); *In re Lowe,* 25 B.R. 86 (Bkrtcy.D.S.C.1982).

There is authority that the proceeds of an IRA constitutes a "special deposit" but this pertains to the relationship between the trustee bank and the depositor of the IRA account. *First National Bank, etc. v. Estate of Philp,* 106 Ill.App.3d 360, 62 Ill. Dec. 433, 436 N.E.2d 15 (1982).

T.C.A. § 26–2–112 establishes the exemptions rights for citizens of Tennessee pursuant to Section 522(b)(1), Public Law 95–598 known as the Bankruptcy Reform Act of 1978, Title 11 U.S.C., Section 522(b)(1). Our statute is comparable to the Florida statute referred to in *In re Gefen,* supra. In support of this observation is *In re Peeler,* 37 B.R. 517 (Bkrtcy.M.D.Tenn. 1984), holding the debtor's IRA did not qualify as an exemptable annuity under T.C.A. § 26–2–111(1)(D).

This Court has examined T.C.A. § 26–2–111(1)(D) in the context of this opinion. We have reached our own conclusion that the legislature did not intend to shield a person's property from the lawful claim of alimony and child support. Therefore, the proceeds of Henry Edwards' individual retirement account are subject to Janie Edwards' claim for monthly alimony payments.

Remanded to the trial court for such further proceedings as necessary consistent with this opinion.

BROCK, C.J., and FONES, COOPER and HARBISON, JJ.