**Norma J. PRIM, Executrix of the Estate of William Kelly Prim, Defendant–Appellant,**

v.

**Lee Reagan PRIM, Plaintiff–Appellee.**

Supreme Court of Tennessee, at Nashville.

July 18, 1988.

Clara Willis Byrd, Nashville, for defendant-appellant.

L.R. DeMarco, Nashville, for plaintiff-appellee.

HARBISON, Chief Justice.

This case involves the question of whether provisions for monthly alimony survived the death of the husband and constituted a continuing obligation of his estate. Both the probate court and the Court of Appeals sustained the claim against the husband's estate and held that the estate was obligated to make monthly alimony payments to the former wife until her death or remarriage. After careful consideration, we reverse and dismiss.

William Kelly Prim and his former wife, Rubye Lee Reagan Prim, were divorced by decree of the Fourth Circuit Court of Davidson County, Tennessee, entered on March 29, 1976. The decree granted a divorce to the wife. It approved and incorporated by reference a property settlement agreement executed by the parties on March 4, 1976.

In essence this agreement contained the following provisions:

(1) Until the wife obtained a divorce the husband agreed to pay her $150.00 per week, together with her medical and hospital expenses and monthly rental on a condominium in Florida. He also agreed to furnish an automobile for her use;

(2) Upon the wife's obtaining a divorce the contract required the husband to furnish her with an automobile, but it required her to pay for liability insurance, license plates, maintenance and other expenses. It also provided that each of the parties should obtain clear title to certain items of personal property which were listed and itemized on other documents incorporated into the agreement by reference. The husband was obligated to pay for dental work for the wife up to a specified amount. The second paragraph also contained the following provisions which are the basis for the present case:

(a) The husband will pay to the wife $900.00 monthly until the wife dies or remarries.

.    .    .    .    .

(e) The husband now has two life insurance policies with the wife as beneficiary along with the only child of the parties who has now reached her majority, and after the divorce, the husband will continue said policies and the beneficiaries will remain the same. Said policies are

(1) New England Mutual Life Insurance Company Policy No. 2.527.373.

(2) New England Mutual Life Insurance Company Policy No. 2.977.177.

Said husband shall change the beneficiary to the wife and otherwise will not alter said policies by any amount or change the beneficiary from the wife during her lifetime, and make the wife a holder of the policies.

(3) The third paragraph recited that "the above obligations" from the husband to the wife "shall be alimony *in solido*." This paragraph then contained a general agreement of mutual satisfaction and release by each of the spouses against the other and

against the property and assets of the other;

(4) This paragraph reserved the right of either party to contest the divorce action against the other, and neither waived any rights against the other "except those property rights which are settled as provided in this agreement and the obligations of alimony as have been agreed upon";

(5) The fifth paragraph dealt with the income tax return of the parties for the year 1975.

A little less than a year later, on February 9, 1977, there was entered in the divorce court a decree, filed in response to a petition by the husband to reduce alimony payments. The decree incorporated a memorandum opinion by the trial judge reducing the monthly alimony from the $900.00 set in the March 4, 1976, agreement to $550.00 each month. It dealt with an arrearage of $450.00 and awarded a fee to counsel for Mrs. Prim. The decretal portion of this order, as pertinent here, is as follows:

It is, therefore, ORDERED, ADJUDGED and DECREED that the support for counter-complainant should be and is hereby set in the amount of $550.00 per month, to be paid by the said William Prim and will continue each and every month thereafter to be paid on the 15th day of each month thereafter.

Mr. Prim died on August 15, 1986, a little over nine years after the entry of the amended decree. He was 65 years of age. He had remarried. His second wife was named executrix, and the residue of the estate, after expenses and a specific bequest, was bequeathed to her. There were alternative bequests in the event she did not survive.

The will was duly probated. Under the will all life insurance policies payable to the estate were to go to the residuary beneficiary. Insofar as the record shows, the two life insurance policies referred to in the 1976 property settlement agreement were kept in force and were duly paid to Mr. Prim's former spouse, the appellee here.

Under date of September 19, 1986, appellee filed a claim against the estate of the decedent for the sum of $550.00 per month until her death or remarriage, the claim being predicated upon the two court decrees hereinabove referred to.

After consideration of the claim and the applicable legal authorities, the probate judge held that the terms of the property settlement agreement were sufficient to require that the monthly alimony obligation to appellee survive as a claim against the husband's estate. Exceptions filed by the executrix were overruled. The Court of Appeals affirmed this holding. At the hearing of the claim in the probate court, no evidence was introduced except the court decrees and the settlement agreement.

■ Both courts below recognized the general rule which is well settled in this state and in the great majority of other jurisdictions that monthly alimony obligations do not survive the death of the obligor unless such survival is specifically provided for by the terms of a divorce decree or a contractual agreement between the parties or by some other stipulation or provision in the decree or contract which would require payments after death. *See Smith v. Phelps*, 218 Tenn. 369, 403 S.W.2d 747 (1966). In that case an agreement of the husband to pay $50.00 per month for ten years unless the wife remarried was held to be sufficient to bind his estate.

In the earlier case of *Brandon v. Brandon*, 175 Tenn. 463, 135 S.W.2d 929 (1940), monthly payments of $150.00 for alimony and child support were held to terminate upon the death of the husband.

In the case of *Edwards v. Edwards*, 713 S.W.2d 642 (Tenn.1986), it was conceded by the parties that monthly payments to the wife until her death or remarriage would survive the death of the husband, and the matter was not litigated in either of the appellate courts.

In *Bringhurst v. Tual*, 598 S.W.2d 620 (Tenn.App.1980), there were provisions in a property settlement agreement that the husband would pay to the wife $350.00 per month until her death or remarriage. By an amended agreement, the parties agreed

that he would pay her $700.00 per month until her death or remarriage. An amended consent decree, however, reflecting the revised agreement, simply called for $700.00 each month to the wife, there being no mention of her death or remarriage. The Court of Appeals held that under these circumstances the monthly payments did not survive the death of the husband, since the final decree made no reference to such survival and did not even contain the contractual provisions for continuation until the death or remarriage of the wife.

It is pointed out by appellant in the present case that the amended decree entered in 1977, decreasing the monthly alimony payments from $900.00 to $550.00, likewise contained no provision for survival of the obligation against the husband's estate and did not contain the language carried in the 1976 property settlement agreement for payments to continue until the death or remarriage of the wife. Both the probate court and the Court of Appeals, however, undertook to distinguish the *Bringhurst* case, *supra*, upon the ground that the second decree in that case was a consent decree, while that in the present case was not.

We are not persuaded by that distinction. In all of the cases the terms and provisions of the final decree have been considered to be very important. The final decree in the present case made no provision for continuation of the alimony until death or remarriage of the wife and certainly contained no provision whatever with respect to the survival of the obligation against the estate of the obligor.

As pointed out in the cases cited above, general provisions that alimony will be payable to the wife until her death or remarriage have frequently been held sufficient to support such claims as continuing obligations after the death of the husband. In almost every instance, however, there has been some circumstance, in addition to this general language, from which an intent that the obligation survive has been gleaned.

In our opinion, this subject is primarily one of draftsmanship and intent. In order for an alimony obligation to survive, in our opinion, something more than the general provisions "until death or remarriage" should be required. Whether the obligation is to continue past the death of the obligor is a most important and critical consideration in preparing a decree in a contested case or in drafting a property settlement agreement.

Survival of the obligation is the exception, not the general rule. In many cases the parties give too little consideration to the question. If the matter were called to their attention, most spouses would not consider that they had bound the estate of the obligor by provisions of a general obligation to pay the survivor until death or remarriage. It would be very simple to bind the estate specifically if the parties so intended and mutually so agreed.

The cases have repeatedly pointed out that the matter is one of intention, not of law. The law itself terminates general support obligations at death because the marriage relation itself is terminated at death. Further provisions for a surviving spouse and children of an existing marriage are contained in the laws of intestacy or in the terms of wills, trusts or insurance policies. In alimony cases such further provisions must be contained in a divorce decree or in a property settlement agreement. They are not to be imposed merely by implication or from ambiguous terms.

The property settlement agreement in the present case characterized all of the obligations from the husband to the wife as alimony *in solido*. It made no distinction between any of the provisions, including those for monthly support. However, it is clear that both the parties and the divorce court considered that the monthly support payments were not alimony *in solido* but were periodic alimony, because the divorce court modified the terms of the property settlement agreement after a contested hearing in 1977. In our opinion, the divorce court was clearly correct in holding that the provisions for monthly support were not to be treated as alimony *in solido* and were subject to modification upon a showing of a change in circumstances.

The 1977 decree, which was not appealed, constituted a final judgment to that effect.

Neither the probate court nor the Court of Appeals gave much significance to the fact that the husband agreed to provide policies of life insurance at his expense payable to the wife in the event of his death. In our opinion, this is a most significant provision and one which should be taken into account and given considerable weight in determining the probable intention of the parties. It is not enough to note that this was merely a provision for alimony *in solido*. Its obvious intent was to provide appellee with a sum of money in the event of and upon the death of the obligor. In our opinion, it was very strong evidence of an intent that the periodic payments not survive his death and that the proceeds from the life insurance policies should take the place of any further obligation from the husband to his former wife.

In this respect the provisions for the life insurance policies were clearly different from those contained in the agreement in *Smith v. Phelps, supra.* There a single policy of life insurance was specifically acquired for the purpose of securing residential mortgage payments and for no other reason. Here the purposes were unlimited, and the proceeds were unconditionally dedicated to the former wife, with the husband having no power or authority to borrow against the policies or to change the beneficiary during her lifetime. During her life and upon the death of the husband, these policies were maintained at his expense to provide appellee with the proceeds.

As pointed out in the case of *Prince v. Prince*, 572 S.W.2d 908 (Tenn.1978), life insurance policies and their proceeds are frequently utilized in marital settlements. In that case the question presented was whether the husband was required to continue payment of premiums on life insurance policies carried for the benefit of the former wife despite her remarriage. The court stated:

The question presented is more factual than legal. In the disposition of domestic relations cases insurance on the life of the husband is utilized in many different ways in making provisions for alimony, child support and the settlement of property rights. In many instances the husband is required to procure or maintain insurance on his life for the benefit of his former wife only for specific periods of time, or until her death or remarriage. Frequently such insurance is used as a form of security, to guarantee to the wife a minimum or a specified sum, and to insure its payment in the event of the untimely death of the husband.

On the other hand, it is not at all uncommon for a property settlement to provide that a husband maintain his life insurance for the benefit of his wife indefinitely and that he pay premiums until policy maturity or until his death. The insurance proceeds may, and frequently do, comprise a major portion of an overall or lump-sum division of assets between the parties.

The problem is primarily one of draftsmanship and of the intention of the parties. There is nothing improper or contrary to public policy in an agreement by a husband to continue to pay premiums on insurance policies for the benefit of his former wife, despite her remarriage. In many instances insurance carriers are furnished copies of such agreements and are directed to notify the wife or her counsel in the event of failure of the husband to comply with their terms. 572 S.W.2d at 908–909.

In our opinion, the language of the final amended decree in 1977 together with the provisions in the property settlement agreement for the maintenance of life insurance policies for the benefit of the wife disprove the contention that Mr. Prim intended that the monthly support payments for his wife should continue after his death or that Mrs. Prim expected them to do so at the time of the divorce proceedings.

The judgments of the courts below are reversed and the claim against the estate of Mr. Prim is disallowed. Costs incident to this claim and its appeal are taxed to the appellee. The cause will be remanded to

**614**

the trial court for collection of costs accrued there and for any other proceedings which may be necessary in the administration of the estate.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.