Janice W. WENDELL, Guardian of
Eric Njordr Ericson, Jr.,
Plaintiff-Appellant,

v.

SOVRAN BANK/CENTRAL SOUTH, Administrator of Estate of Eric Njordr
Ericson, Deceased, Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Sept. 1, 1989.

Permission to Appeal Denied by
Supreme Court Nov. 21, 1989.

Richard Lodge and Steven E. Anderson,
Bass, Berry & Sims, Nashville, for plaintiff-appellant.

Christopher M. Was and Cynthia E. Berry, Trabue, Sturdivant & DeWitt, Nashville, for defendant-appellee.

OPINION

FRANKS, Judge.

In this action on the behalf of deceased's minor son asserting a claim against decedent's estate for "breach of a Child Custody and Property Settlement Agreement", the trial court concluded the promise to procure life insurance did not create a separate property right in the child nor did the deceased's child support obligation survive decedent's death.

Janice W. Wendell, guardian for her minor son Eric, married deceased on May 15, 1972. Eric was born to the marriage on

October 13, 1973. Pursuant to a divorce on March 2, 1983, the deceased and Janice executed a "Child Settlement and Property Settlement Agreement". The pertinent portion material to the issues before the court is:

*Child Support.* Mr. Ericson agrees to pay one-half of the minor child's clothing expense. Should the minor child elect to attend college, the clothing expense shall continue until the child terminates his undergraduate education or becomes 23 years of age, whichever event shall first occur. In addition the parties agree as follows:

(a) Mr. Ericson agrees to be individually responsible for paying all costs of every nature associated with the child's attendance at private school on an elementary, junior high school, and high school level. This obligation on the part of Mr. Ericson shall include, but not by way of exclusion, all costs of tuition, books, meals (except meals packed as lunch from Mrs. Ericson's residence), fees, trips, uniforms, athletic participation, etc. It is the expressed intent that all costs and obligations associated with the child's attendance at private school shall be included herein, and Mr. Ericson shall reserve the right and privilege to pay said obligations directly to the school and/or the organization involved. In the event it should be necessary that Mrs. Ericson advance sums to meet any of said obligations, she will submit to Mr. Ericson a receipt document and payment, and Mr. Ericson agrees to reimburse her for said amounts.

(b) The parties agree that in the event that the minor child desires to attend undergraduate school upon his completion from high school, Mr. Ericson agrees to be individually responsible for all costs of every nature associated with the child's attendance at a college or university. It is the intent of the parties that the obligation shall include all reasonably associated costs involved in said undergraduate educational process, including reasonable spending money for the child, and said obligation shall continue until the child graduates from undergraduate school, terminates his or her undergraduate educational process, or becomes 23 years of age, whichever event shall first occur.

(c) Mr. Ericson agrees to maintain in full force and effect health insurance, hospitalization, and dental insurance coverage on the minor child of the parties, and he agrees to be individually responsible for all medical, dental, drug, orthodontist, opthomologist, psychologist, and other medically and dentally related costs not covered by said insurance programs. Further, in the event the minor child decides to attend college subsequent to graduation from high school, this obligation on the part of Mr. Ericson shall continue until said child graduates from undergraduate school, terminates his or her undergraduate educational process, or becomes 23 years of age whichever event shall first occur.

(d) In order to secure the adequacy of funds to meet the obligations for the child herein described in the event of Mr. Ericson's premature death, he agrees to maintain in full force and effect term life insurance coverage in the amount of $100,000.00. Mr. Ericson shall be the owner of said policy, and Mrs. Ericson shall be designated as beneficiary in trust for the minor child. Mrs. Ericson, as trustee, agrees to utilize said insurance proceeds for the support, maintenance, and education of the minor child and agrees that at such time as the minor child becomes 25 years of age, she will distribute the proceeds to the child.

■■■ As a general rule, where the terms of an agreement for child support are incorporated in a divorce judgment, the agreement is stripped of its contractual nature but, to the extent an agreement establishes obligations beyond the statutory duty of support, the contractual nature of the obligation is retained. *Penland v. Penland*, 521 S.W.2d 222 (Tenn.1975). The issue thus becomes whether the parties intended their agreement to create obligations of support beyond the father's death. The applicable rules are the duty of a parent to support a child ends at majority

or the parent's death, *Prim v. Prim*, 754 S.W.2d 609 (Tenn.1988), but the obligation to support may survive by contract between the parties. This determination is to be made not as a matter of law but from the document creating the obligation. The Supreme Court has observed: "These issues [are] more factual than legal." *Id.*, at 613; *also see Prince v. Prince*, 572 S.W.2d 908 (Tenn.1978).

In the instant case, the language of the agreement establishes deceased intended to provide more for Eric than required by statute; moreover, he intended to satisfy the obligations whether or not he died before the obligations created by the contract were executed. This is evidenced by the provision that support continued through age 23 or end of undergraduate school, whichever occurred first.

The parties also explicitly agreed that the father would maintain a life insurance policy of $100,000.00 for Eric's support, maintenance and education in the event of the father's death. The policy was to be held in trust for Eric by his mother. Clearly the father contemplated his own death and agreed to insure that his son's obligations would be met in the event of the father's untimely demise. The language of the agreement reveals the obligations exceed the statutory norm rendering it contractual in nature. Accordingly, the parties intended that the child support obligations would survive the deceased.

The final issue is how the deceased intended to satisfy these obligations in the event of his death. The administrator argues the promised policy was solely to secure resources for the decedent's obligations and since the intestate's share provides ample funds for this purpose,[1] the failure to procure insurance is now of no consequence.

This court considered the language of a property settlement agreement in *Holbert v. Holbert*, 720 S.W.2d 465 (Tenn.App. 1986), where a daughter had filed a declaratory judgment seeking insurance proceeds and monthly child support payments after

her father's death. The daughter had also inherited a trust fund from her father's estate. In that case it was held that the daughter's receipt of insurance proceeds in addition to her share of the trust income was not inequitable. The father had established the trust voluntarily with the full awareness of his prior commitments under the divorce settlement. The court concluded the father intended his daughter to have the benefit of both funds, noting that the language of the settlement agreement did not establish that the insurance proceeds were intended solely to secure child support. Of significance was the fact that the insurance and support requirements were not coterminous as to duration. *Id.*, at 468.

In the instant case, the agreement establishes deceased's intent to create a financial resource pool from which his assumed obligations could be satisfied in the event of his death. These obligations for clothing, education and health expenses would continue until his son terminated his undergraduate education or reached age 23. The life insurance provision is not coterminous as to duration since Eric's mother was to remain the trustee of the funds until Eric reached age 25, when the remaining proceeds were to be delivered to him. There was no provision changing the beneficiary of the policy in the event Eric did not attend college or did not need the money. Viewed as a whole, the support terms are generous. The father agreed to pay half of all Eric's clothing expenses, "all costs of every nature" related to Eric's attendance at private schools and colleges, including reasonable spending money, all medical and dental costs, etc.

There is nothing in the agreement to suggest Eric would be entitled to the insurance proceeds at the expense of his inheritance or that one benefit would offset the other. The clause does not identify the insurance proceeds as Eric's sole support and there is no statement in the agreement that Eric's inheritance was meant to offset his right to the insurance proceeds. Such provisions are properly included in these

---

1. The parties stipulated Eric will inherit a fractional share of deceased's estate or $166,840.00.

agreements, *see Fender v. Fender*, 256 S.C. 399, 182 S.E.2d 755 (1971).

Applying the court's analysis in *Holbert* strengthens this result. It is not inequitable for Eric to collect both insurance proceeds and his intestacy share in light of the language of the agreement and the size of the deceased's estate.[2] The child support obligation provided in the agreement does not terminate at the same time as Eric's claims under the policy. The former ends at age 23 or termination of college while the latter ends at age 25.

Finally, the agreement establishes the father intended for Eric's rights to the insurance proceeds to be added to any inheritance he might receive. Eric is to receive all remaining proceeds of the $100,000.00 policy without restriction at age 25. This provision, in combination with the generous tenor of the entire paragraph, reveals the proceeds were not intended merely to secure child support payments. The estate's argument that the estate can renege on the agreement to provide insurance without incurring any consequences or that the agreement can be honored only at the risk of effectively disinheriting Eric was not the deceased's intent as expressed in the agreement.

The judgment of the trial court is reversed and the cause remanded to enter a judgment on the claim against the estate in accordance with the terms of the contract.

Costs incident to the appeal are assessed to the appellee.

TODD, P.J., concurs.

CANTRELL, J., not participating.

2. According to the affidavit of a trust officer with Sovran Bank, the net estate distributable to heirs totals approximately $1,751,830.00.