IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2002 Session

## MARY WEST VARNER v. JASON MATTHEW VARNER

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 00 D 2337     Hon. L. Marie Williams, Circuit Judge**

**FILED SEPTEMBER 25, 2002**

**No. E2001-02917-COA-R3-CV**

In divorce case the Trial Court divided marital property and debts, awarded alimony and designated debts to be paid by husband as alimony. On appeal, we affirm in part and reverse in part.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Brian M. House, Ringgold, Georgia, for Appellant, Jason Matthew Varner.

David H. Lawrence, Chattanooga, Tennessee, for Appellee, Mary West Varner.

## OPINION

In this divorce action the husband appeals the Trial Court's allocation of the marital debt, the award of rehabilitative alimony to the wife, and whether the Trial Court correctly characterized the marital debt as alimony and thus non-dischargeable in bankruptcy.

The record before us contains a statement of evidence prepared pursuant to Tenn. R. App. P., 24(c).

The parties separated in October 2000, after 22 months of marriage. The wife worked as a sales clerk at Parisian at an annual salary of $18,000.00 and was a high school graduate with training in cosmetology. She suffers from fibromyalgia, narcolepsy, and depression. The husband is employed by the Postal Service, with an annual salary of $22,000.00, plus fringe benefits. He has an A.S. degree in computer science from Chattanooga State, and additional training in networking, installing and troubleshooting. For about six months he had been working with the owner of a computer consultant business in the evenings, about 15 hours per week, but was not paid for this work. He claims he was getting valuable work experience for these efforts. He conceded his prospects for future increased earnings are better than the wife's.

The parties brought minimal assets to the marriage. Both husband and wife had substantial student loans, and each was ordered to pay his or her own student debt. A large amount of consumer debt accumulated during the marriage. Eventually, two consolidation loans totaling approximately $24,000.00 were made, a substantial amount of which were associated with the husband's computer consulting activities. The wife testified her portion of this debt was $7,357.36. The husband produced no countervailing evidence. A disputed issue concerned money loaned from the wife's parents during the marriage, totaling $14,740.00. The wife and her mother testified that these monies were advanced as a loan, and the mother testified that she and her husband expected the loan to be repaid. The husband testified the wife's parents had given them money during the time they were together, but denied anything was said about the money being a loan.

In the final decree, the Trial Court awarded the wife any interest in the marital residence, one-half of the increase in the value of the husband's 401(k), Thrift Savings Plan, and any lump sum earnings-payment/bonus during the marriage, and also one-half of the increase in value of those accounts from January 1 to July 17, 2001, one-half of the parties' 2002 tax refund,[1] and four months of alimony at the rate of $300.00 per month.

Husband was ordered to pay the following marital debts:

| | |
|---|---|
| Household Finance Corporation | $6,358.17 |
| Associates Capital Bank | $5,326.73 |
| Dillards's | $600.74 |
| Discover | $7,604.20 |
| First Card USA | $5,170.20 |
| Total: | $25,060.04 |

Each party was ordered to be solely liable for their student loans (wife at $11,283.00, husband at $16,590.00), and wife would be solely responsible for "all monies loaned to the parties

---

[1]The record does provide exact information on the final award. It may be estimated at roughly $6,639.00 excluding the increase in value of the accounts for 2001.

during the marriage," by her parents.

Subsequently, pursuant to motion, the Trial Court further ordered: "It is the specific intention and order of the court that said obligations imposed upon the defendant/husband under this paragraph [3] are for the purpose of the support and maintenance of the plaintiff, and that said obligations are non-dischargeable in bankruptcy."[2]

Our review of the Trial Court's findings of fact is *de novo* upon the record with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We do not interfere with the Trial Court's decisions with regard to alimony awards, "except where there is a clear showing that the court, in its discretion, reached the wrong conclusion with the result that a manifest injustice will be done if the trial court's decision is allowed to stand. *Buter v. Butler*, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984).

Trial courts have broad discretion in determining the nature and classification of the marital estate, and their decisions are entitled to great weight on appeal, unless they are not supported by the evidence or are contrary to public policies reflected in statutes governing spousal support. *Wilson v. Moore*, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996).

Husband contends the Trial Court's division of marital debt was inequitable, as the only marital debt wife was ordered to pay was the loan from her parents. The Trial Court found that the monies advanced from the wife's parents was a loan, as the wife and her mother testified. The record does not contain the Court's Memorandum Opinion referred to in the final Judgment.[3] Generally, the trial court is the judge of the credibility of the witnesses, and we will not disturb the Trial Court's findings of fact based upon evidence found credible by the Trial Judge.

On the record before us, we cannot say the Trial Court's allocation of the marital debt is inequitable, and we affirm the Trial Court on this issue.

---

[2]Paragraph 3:
"That, as alimony, the Defendant/Husband shall continue to make all payments to the parties' several accounts at Consumer Credit Counseling Service until said accounts are paid and discharged and, accordingly, shall be solely responsible for the parties' debt owed to Household Finance Corporation for $6,358.17, Associates Capital Bank for $5,326.73, Dillard's Department Store/Dillard National Bank for $600.74, First Card USA/Gold Master Card for $5,170.34, and Discover Card for $7,604.20 and shall hold Plaintiff/Wife harmless thereon. . . ."

[3]The final Judgment states:
"Following the presentation of proof and argument of counsel, the Court rendered its Memorandum Opinion from the bench as to the adequate and sufficient provision for an equitable settlement of the property rights between the parties and provision for alimony. . . ."

As to the issue of the award of alimony, there is evidence that the husband could be limiting his income by not charging for his computer consulting services. Given the wife's need, her physical and mental problems and dire financial circumstances, and the husband's ability to pay and the modest amount of the award, the alimony awarded we find to be proper, and we affirm.

Finally, the husband argues the Trial Court erred in amending the original Decree without an evidentiary hearing, and ordering that the marital debts to be paid by the husband were alimony support payments and therefore, non-dischargeable in bankruptcy.

The Trial Court stated in the amended Order that the specific intent and purpose of the payment of the marital debt was "for the support and maintenance of the plaintiff." Thus, it was characterized as rehabilitative alimony. This is of some significance, because under the statute, rehabilitative alimony terminates upon the death of either recipient or payer, unless otherwise specifically stated in the divorce decree. Tenn. Code Ann. §36-5-101(d)(2). *Edwards v. Edwards,* 713 S.W.2d 642, 645 (Tenn. 1986). Moreover, marital debt is subject to payment by one's estate upon death. *See Mondelli v. Howard*, 780 S.W.2d 769, 775 (Tenn. Ct. App. 1989). In this case, none of the debt obligations the trial court characterized as alimony would be exempted from the claims of creditors upon the death of either spouse, which militates against characterizing these debts as alimony. Debts incurred to finance a spouse's new business are not generally viewed as benefitting the other spouse which has not become successful. *See e.g., King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998). The evidence is uncontradicted that a substantial amount of the debts ordered paid by the husband were incurred for the husband's computer business, for which the wife received no benefit, and no income was ever realized from the business during the marriage.

State courts have concurrent jurisdiction with the bankruptcy court to determine the dischargeability of debts to a spouse incurred in connection with a divorce decree, and depends upon whether the debt is characterized as alimony, maintenance or support. *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992).

*In re Calhoun*, 715 F.2d 1103 (6th Cir. 1983), set forth a four-part test to determine whether the assumption of a debt is in the nature of alimony, maintenance or support, resulting in non-dischargeability in bankruptcy:

1.    Whether the state court or the parties intended to create an obligation to provide support through the assumption of the joint debts;

2.    Whether such assumption has the actual effect of providing the support necessary to ensure that the daily needs of the spouse and any children of the marriage are satisfied;

3.    The amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support.

4.	If the amount of support is unreasonable how much of should be discharged for the purposes of bankruptcy.

Additional factors to be considered in order to determine whether liabilities established in a divorce decree are truly alimony or are in the nature of a property settlement are: whether payments are made directly to the spouse; evidence that a spouse relinquished rights and support in return for the payment of the obligation; the document itself and any inferences which might be draw and the placement of specific provisions in the document; whether the debt was incurred for the immediate living expenses of the spouse; whether the payments were intended for the economic safety of the dependent; whether the obligation is enforceable by contempt; and whether the payments are in installments over a substantial period of time. *Vickers v. Vickers*, 24 B.R. 112 (M.D. Tenn. 1982).

This Court has adopted the *Calhoun* analysis as persuasive reasoning to determine whether awards are property settlements or alimony. *See Emison v. Emison*, 1999 Tenn. App. Lexis 865, No. 02A01-CH00230. *Calhoun* held it is necessary to determine whether something not denominated as support in a divorce decree is really support. *See Fitzgerald v. Fitzgerald*, 9 F.3d 517 (6th Cir. 1993). Applying the *Calhoun* criteria, in this case it is clear the Trial Judge intended to insulate the debt obligation from bankruptcy, albeit after the trial and after counsel raised the matter by post-trial motion. The original Decree had declared the parties' divorced, divided the assets, assigned the debts and awarded alimony. The structure of the original decree indicates the Court had divided the marital debt as debt, and then made a provision for alimony. While the first prong of the *Calhoun* test is met, it does not appear that the Order to pay off these debts had the actual effect of meeting the daily needs of the wife. The only evidence in the record is the wife's account of the breakdown on the consolidated debt, and the payment of these debts does not appear to be necessary for meeting the wife's support needs. It does not follow that debts incurred for an unsuccessful business that have not benefitted the spouse are necessary for the spouse's support needs. In general, debt obligations such as mortgages, insurance premiums, car notes and medical bills are viewed as more directly associated with daily support needs.

The third test under *Calhoun* requires that the award must not be excessive under the traditional concept of support. Here the marriage was of very short duration and the wife received cash assets of at least $6,600.00 and an alimony award of $1,200.00 plus the marital residence. If the marital debt allocated to the husband is deemed alimony, it represents an award of more than one year of the husband's salary. However, it is inappropriate to award alimony out of the expectation of his earnings, as the award must be based upon the present marital estate. *Aleshire v. Aleshire*, 642 S.W.2d 729, 723 (Tenn. Ct. App. 1981). Accordingly, we conclude that there is no basis in the record to uphold the Trial Court's designation of the allocation of debt as alimony. Accordingly, we reverse this classification of the debt by the Trial Court.

The cost of the appeal is assessed one-half to Jason Matthew Varner and one-half to Mary West Varner, and the cause remanded.

_____
HERSCHEL PICKENS FRANKS, J.