IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2005 Session

**THE ESTATE OF FLOYD LEROY OLMSTEAD, DECEASED and
BARBARA D. OLMSTEAD, Executrix, v. BETTY JAYNE OLMSTEAD**

**Direct Appeal from the Chancery Court for Greene County
No. 2003P090      Hon. Thomas R. Frierson, II., Chancellor**

---

**No. E2004-01843-COA-R3-CV  - FILED MARCH 21, 2005**

---

In the Divorce Decree Decedent was ordered to pay alimony "until remarriage or death of plaintiff". Decedent's estate refused to pay alimony.  The Trial Court held the Decree required the payment of alimony after Decedent's death.  On appeal, we reverse and dismiss.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

William S. Nunnally, Greeneville, Tennessee, for appellants.

C. Todd Chapman, Greeneville, Tennessee, for appellee.

**OPINION**

In this action against the estate, the Trial Court held the Estate was liable to continue to pay alimony to the Deceased's former wife.  The estate has appealed.

The factual background is set forth in the Trial Court's Memorandum which we quote:

Floyd Leroy Olmstead and Betty Jayne Olmstead were divorced by Final Judgment entered in the Circuit Court for Greene County, Tennessee, case No. 43739 on June 28, 1974. With respect to spousal support, paragraph 6 of the Final Judgment contained the following pertinent language:

"The Defendant shall pay the sum of two hundred seventy-five dollars ($275.00) directly to the Plaintiff on or before the fifth day of each month hereafter as alimony until the remarriage or death of the Plaintiff; provided further that either party may move the court for modification of said alimony in the event of a change of circumstances."

Mr. Olmstead died on April 3, 2003. Claimant Betty Olmstead asserts that Mr. Olmstead's death did not terminate his alimony obligation.

The Trial Court concluded:

In the case at bar, the Final Judgment of Divorce does not specifically provide for survival of the monthly alimony obligation following the death of the obligor. No other contractual agreement between the parties provides for such survival benefits. However, the Final Judgment of Divorce specifically reflects that Ms. Betty Olmstead had not been gainfully employed during the main portion of the parties' marriage and that she was then physically disabled and unemployable. During his lifetime, Mr. Olmstead took no steps to modify his alimony obligation, but instead kept his payments current. The Final Judgment made no provision of life insurance in favor of Ms. Olmstead, see Prim, *supra.* Considering the language of the Final Judgment, as well as the attendant circumstances, this Court determines that Mr. Olmstead intended to carry out the agreement, obligating him to pay spousal support until Ms. Betty Olmstead's death or remarriage.

The Trial Court, in reaching its conclusion, relied heavily on the unpublished case of *Colson v. Colson*, 1996 LEXIS 188 (Tenn. App. 1996). *Colson* is factually distinguishable on several grounds. In *Colson*, the parties had mutually agreed to the payment of alimony, but in this case, the Deceased resisted the payment of alimony, and it was the Court's Order that required him to pay. Also, it was established in the *Colson* case that Ms. Colson needed the alimony subsequent to Colson's death.[1] Also in the *Colson* case, the nature of Ms. Colson's condition would deteriorate, which was not necessarily true at the time of the divorce in this case. While the foregoing factors distinguish *Colson* from the case before us, the *Colson* case is not otherwise controlling authority in our view.[2] The principles set forth in *Prim v. Prim*, 754 S.W.2d 609 (Tenn. 1988) are the

---

[1]Ms. Olmstead did not establish need.

[2]Supreme Court Rules. Rule 4(H)(1).
An unpublished opinion shall be considered *controlling authority between the parties to the*

controlling authority on this issue. In *Prim*, Chief Justice Harbison wrote at page 612:

> As pointed out in the cases cited above, general provisions that alimony will be payable to the wife until her death or remarriage have frequently been held sufficient to support such claims as continuing obligations after the death of the husband. In almost every instance, however, there has been some circumstance, in addition to this general language, from which an intent that the obligation survive has been gleaned.
>
> In our opinion, this subject is primarily one of draftsmanship and intent. In order for an alimony obligation to survive, in our opinion, something more than the general provisions "until death or remarriage" should be required. Whether the obligation is to continue past the death of the obligor is a most important and critical consideration in preparing a decree in a contested case or in drafting a property settlement agreement.
>
> Survival of the obligation is the exception, not the general rule. . . . The cases have repeatedly pointed out that the matter is one of intention, not of law. The law itself terminates general support obligations at death because the marriage relation itself is terminated at death. Further provisions for a surviving spouse and children of an existing marriage are contained in the laws of intestacy or in the terms of wills, trusts or insurance policies. In alimony cases such further provisions must be contained in a divorce decree or in a property settlement agreement. They are not to be imposed merely by implication or from ambiguous terms.
>
> It is the widely followed general rule that where there is no statute and the divorce decree is silent as to whether the deceased's estate is obligated to pay alimony, the right to receive alimony and the corresponding duty to pay, being personal, are terminated at the death of either party. *See* 27(B) CJS Divorce, § 374, p.222.

Applying the *Prim* principles to this case, we find no basis to imply from the Decree that the husband intended to bind his estate to pay alimony to his former wife. For the foregoing reasons, we reverse the Judgment of the Trial Court and remand, with the cost of the appeal assessed

---

*case* when relevant under the doctrines of the law of the case, res judicata, collateral estoppel, or in a criminal post-conviction, or habeas corpus action involving the same defendant. Unless designated "Not For Citation," "DCRO" OR "DNP" pursuant to subsection (F) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority. . . .

(2) Opinions reported in the official reporter, however, shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.

to Barbara D. Olmstead.

_____
HERSCHEL PICKENS FRANKS, P.J.