IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2003 Session

## ANGELA D. (FEZELL) TAYLOR v. DOUGLAS W. FEZELL

**Direct Appeal from the Chancery Court for Greene County**
**No. 98000057    Hon. Thomas R. Frierson, II., Judge**

**FILED NOVEMBER 13, 2003**

**No. E2002-02937-COA-R3-CV**

In post-divorce action by husband, the Trial Court refused to void trust provision in Marital Dissolution Agreement and calculated child support. Husband appealed, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

John P. Chiles, Kingsport, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for Appellant.

C. Dwaine Evans, Morristown, Tennessee, for Appellee.

## OPINION

The husband filed this post-divorce action in August 2001, seeking equal parenting time, reduction in child support and seeking a determination that the Trust Agreement in the Marital Dissolution Agreement ("MDA") be declared void because it was child support based upon a hypothetical percentage of future income, and did not comply with the child support guidelines. The mother filed a counter-claim that the father had willfully refused to fund the trust, not paying the proper amount of child support, and she asked for attorney's fees.

The parties had divorced in 1999, and in their Marital Dissolution Agreement the mother was designated as primary residential custodian of the two minor children, ages 5 and 3 on the date of divorce. The father would have visitation time more than the standard amount contemplated

by the Child Support Guidelines. It was agreed that the child support would be $1,300.00 per month, and additionally, the parties agreed the Father would make contributions to a trust to be established for the benefit of the children. The MDA set forth the terms of the Trust Agreement.

At the time of the divorce, the parties owned a business, Professional Vending Services, Inc., (PVS), which they had purchased in 1989 with Wife's father. He sold his interest to the parties in 1994. The company buys vending machines and auxiliary equipment, and places and services them in commercial locations. It is undisputed that PVS is a very capital-intensive business, and a proper valuation of the business was a major issue at the time of the divorce. The final agreement between the parties was that the father would continue to be the sole stockholder and president of the company, and the mother would be paid $310,000.00 for her one-half share. The mother testified that she agreed to accept less cash than the business was actually worth in exchange for the trust benefit to go to the children. Her testimony is not contradicted.

The purposes of the trust are "only for medical emergency expenses, educational expenses, and/or for either child to use towards a down payment for the purchase of a home after the child(ren) reaches age twenty-one." The trust is funded from a percentage of the net corporate profits of PVS, Inc., with the percentage to be increased for each tax year through 2002, or when the eldest child turns 18 or graduates from high school. At that point, the contributions remained at a maximum of 32% of the net profits from PVS. The parents were designated as co-trustees and had to agree on any disbursements from the trust. If a child dies before the trust terminates, then his or her share would be distributed to the other child. The trust will be paid out one-fourth to a child upon attaining age 21, another one-fourth at age 25, and the balance at age 30.

Mother asserts that converting PVS to C corp status and the resulting removal of company earnings from Father's income was done in conjunction with his attempt to reduce child support, and she further contends that by accumulating retained earnings from $9,341.00 to $61,498.00 in 2001 demonstrated the father's attempt to reduce his income in anticipation of the child support hearing.

However, the mother presented no evidence to contradict the testimony of the accountant and the tax preparer that the company's earnings were not excessive, and that PVS was severely undercapitalized and that legitimate business purposes necessitated the changes made to improve the financial health of the company.

The Trial Court found that the father's actions were taken for legitimate business purposes and at the advice of counsel, but this did not demonstrate any actual reduction in his income that would justify a reduction in his child support obligations. The Trial Court imputed the total income of PVS for 1999 and 2000 to the father, although he actually received only a fraction of the income shown on the tax returns. Most of the income was retained in the business; however, the decisions on salary and company earnings were solely within his control. The Court did not impute the corporate income for 2001 to the father, after PVS changed to a C corporation.[1] The Court

_____

[1]Father's 2001 tax return shows that his income in 2001 was actually higher than in 1999 or 2000.

averaged the father's total income for 1999, 2000 and 2001, which computed to an average annual income of $107,433.00. This calculates to a support obligation of $2,012.00 per month under the Guidelines. The Court credited $435.42 per month to adjust for the father's increased parenting time, with the net result of $1576.58 per month child support.

With respect to the trust established in the MDA, the Trial Court ruled that it was valid as a term of the property settlement and was not to be construed as child support. Accordingly, it was not subject to the child support rules. Arrearages for the failure to make the contributions to the trust were assessed against the father in the amount of $21,014.48. Finally, the Court denied Mother's request for attorney fees.

The father's primary argument is that the trust is void because it is calculated based upon future, rather than present income, and does not state a sum certain amount.

Agreements to extend a parent's obligation beyond the legal duty of support as defined by statute, are enforceable in court under principles of contract law. *Wendell v. Sovran Bank/Central South,* 780 S.W.2d 372, 374, (Tenn. Ct. App. 1989). In *Noble v. Stubblefield*, 755 S.W.2d 454 (Tenn. Ct. App. 1988), a trust was established for the use and benefit of the wife as a part of the divorce agreement, but the document did not contain the word "alimony" or "support" or their equivalent. The ex-husband sought to have the trust terminated based upon a change in the ex-wife's circumstances, contending that it was periodic alimony and therefore modifiable by the court. This Court held that the trust was set up as a replacement for the government funds she had forfeited upon her marriage, and we construed the trust as a part of her overall property settlement, which would not be modified upon "a change of circumstances". This case is instructive on the issue before us. The starting point in construing a document is to ascertain the intent of the parties to the agreement. *Planters Gin Co. v. Federal Compress & Warehouse Company, Inc.,* 78 S.W.3d 885, 890 (Tenn. 2002). If the language is clear and unambiguous, then its interpretation is a question of law, and the literal meaning of the language controls the dispute. *Perry v. Sloan*, 277 S.W.2d 355, 360 (Tenn. 1955).

There is no ambiguity in the portion of the MDA in dispute. The document clearly creates a trust for the children which clearly extends well beyond the legal duty of support, potentially until they reach the age of 30. The uncontradicted evidence in the record is that the mother accepted a lesser cash payment for her share of the business in exchange for the trust agreement. The fact that the trust provision is located in the "child support" section of the MDA, is not dispositive of the intent of the parties, nor is the absence of the term "property settlement." The location of the trust within the document is of no assistance in determining whether it is child support or property division. *See, e.g., Hampton v. Hampton,* 1992 WL 1400 (Tenn. Ct. App. 1992).

There is no basis to find that the Agreement was intended to be child support within the document, and we affirm the Trial Court's determination that the Trust was a part of the Marital Property Division.

Both parties dispute the manner in which the Trial Court calculated the father's child support. Father insists that he was not manipulating his income and the company's retained earnings in 1999 and 2000 should not be imputed as income to him. The mother on the other hand, argues that

the corporate earnings in 2001, after the conversion of PVS to a C corporation, should have been added to the father's income.

The accumulated earnings retained by a solely-owned business may be considered by the Court when setting child support under the guidelines. *Higgs v. Higgs*, 1997 WL 691530 (Tenn. Ct. App. 1997). Retained earnings which appear excessive in view of the industry norm for the business will be scrutinized to determined whether they are consistent with prudent business practices. *Piper v. Andrews*, 1999 WL 772127 (Tenn. Ct. App. 1997); *Moseley v. Moseley*, 2002 WL 340593 (Tenn. Ct. App. 2002). We hold the Trial Court properly imputed certain of the retained earnings to the father.

We affirm the Judgment of the Trial Court in establishing the amount of child support, as the evidence does not preponderate against the finding of the Trial Court. Tenn. R. App. P. 13(d).

The wife has asked for attorney's fees incident to this action. The award of attorney's fees is within the trial court's broad discretion. *Koch v. Koch,* 874 S.W.2d 571 (Tenn. Ct. App. 1993). Unless it "affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining," the trial court's exercise of discretion will not be reversed on appeal. *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn.1999). We find no abuse of discretion in the Trial Court's denial of attorney's fees.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Douglas W. Fezell.

_____
HERSCHEL PICKENS FRANKS, J.

-4-