**Thomas C. PRINCE,
Petitioner-Defendant,**

v.

**Gloria Lyle PRINCE (Koogler),
Respondent-Plaintiff.**

Supreme Court of Tennessee.

Oct. 30, 1978.

Frank L. Flynn, Sr., Robert J. Brenner, Knoxville, for petitioner-defendant.

Ray H. Jenkins, Knoxville, for respondent-plaintiff.

## OPINION

HARBISON, Justice:

This case involves the interpretation of life insurance provisions in a divorce decree.

The trial judge held that upon remarriage of the wife, some two years after entry of the decree, the husband had no further obligation to pay premiums on the policies involved. He dismissed a contempt petition citing the husband for discontinuing the payments. He held, however, that the husband, at the option of the wife, would be obligated to pay to her in a lump sum any cash values of the policies as of the date of her remarriage. The Court of Appeals reversed. It concluded that the provisions of the divorce decree were in the nature of a property settlement, requiring the husband to maintain the insurance policies for the benefit of his former wife, despite her remarriage, and to continue the payment of premiums in the future. This Court granted certiorari to give further consideration to the issues.

The question presented is more factual than legal. In the disposition of domestic relations cases insurance on the life of the husband is utilized in many different ways in making provisions for alimony, child sup-

port and the settlement of property rights. In many instances the husband is required to procure or maintain insurance on his life for the benefit of his former wife only for specific periods of time, or until her death or remarriage. Frequently such insurance is used as a form of security, to guarantee to the wife a minimum or a specified sum, and to insure its payment in the event of the untimely death of the husband.

On the other hand, it is not at all uncommon for property settlements to provide that a husband maintain his life insurance for the benefit of his wife indefinitely and that he pay the premiums until policy maturity or until his death. The insurance proceeds may, and frequently do, comprise a major portion of an overall or lump-sum division of assets between the parties.

The problem is primarily one of draftsmanship and of the intention of the parties. There is nothing improper or contrary to public policy in an agreement by a husband to continue to pay premiums on insurance policies for the benefit of his former wife, despite her remarriage. In many instances insurance carriers are furnished copies of such agreements and are directed to notify the wife or her counsel in the event of failure of the husband to comply with their terms.

In the present case the provisions of the divorce decree were somewhat indefinite. They were not entirely clarified by the testimony offered at the contempt hearing. The parties are in disagreement as to the meaning and import of the provisions of the decree which they agreed upon. However, many of the facts leading up to their agreement are not disputed.

Respondent, then Mrs. Prince, filed her petition for divorce on April 3, 1972. The petition recites that the parties at that time had been married for about five and one-half years and had no children. The husband was charged with cruel and inhuman treatment. The petition states that the parties had made "a full, final and complete property and alimony settlement," the terms of which were set out in ten paragraphs. It is not necessary to quote these

in detail. The petition states that the wife was the owner of a residence in Knoxville, encumbered by a small first mortgage and also by a home improvement loan. It alleges that the husband had agreed to make payments on the home until it was cleared, or until remarriage of the wife. The wife was also to receive certain articles of household furnishings and an automobile, with the husband agreeing to make monthly payments on the unpaid purchase price of the automobile until it was fully paid or until the wife remarried. The husband also agreed to pay to the wife periodic alimony of $410 per month, these payments to continue until remarriage of the wife.

The fifth paragraph of the alleged agreement is that around which the present dispute centers. The complaint alleged:

"(5) Defendant is the owner of life insurance policies, and he is to give and transfer to the plaintiff life insurance which he now carries aggregating $30,-000, which is to be the absolute property of the plaintiff with no strings attached, and defendant is to continue paying the premiums on said life insurance. The said policy will be delivered to the plaintiff."

The divorce petition further recites that the defendant had agreed to provide certain tuition for the wife at the University of Tennessee for a period of two years, and there were provisions for the repayment by him to her and to her son of certain loans they had made to him, totaling $16,000. These were to be repaid after the mortgage payments on the home and automobile had been completed. There was no provision for termination of these payments upon the remarriage of the wife. In the ninth paragraph the husband agreed to purchase for the wife a five-acre tract of land, and in the tenth paragraph there was provision for his payment of her attorney's fees.

The only other provision of the agreement with reference to any type of insurance was the seventh paragraph as follows:

(7) Defendant is to pay for all reasonable repairs and upkeep on plaintiff's automobile, and likewise is to pay the premi-

ums on automobile liability insurance until she remarries or dies, also hospitalization insurance."

The petition alleged that the foregoing agreement was to be incorporated into any final divorce decree, and that there was to be a further provision that if the husband should die before the $16,000 indebtedness to the wife and son was fully liquidated, the balance should be an obligation upon his estate.

To this petition, the husband filed an answer, through counsel, the last paragraph of which is as follows:

"He admits that the agreement of the parties hereto with respect to property, alimony and support, and other payments is correctly set forth in the original complaint."

The divorce case was heard on May 5, 1972, a little over a month after the petition had been filed, and a final decree was entered on that date, signed by the trial judge and by counsel for each of the parties. It awarded a divorce to the wife, and ratified and confirmed the agreement between the parties. The terms of the agreement were restated in the divorce decree, in unnumbered paragraphs, but almost verbatim in the language of the original complaint.[1]

The decree recited that it was final insofar as the divorce was concerned, but the cause was retained on the docket and continued from term to term for the purpose of enforcing "the provisions thereof".

Insofar as the record reveals, there never was a separate written property settlement and alimony agreement between the parties. Such agreements as had been reached were reflected in the petition and in the final divorce decree.

It is apparent from reading the agreements between the parties that many of the obligations of the husband were expressly made to terminate upon the remarriage or death of the wife, including provisions for automobile and hospitalization insurance premiums. Others were clearly to survive even the death of the husband and obviously were not to be affected by remarriage of the wife, these including the purchase and transfer to her of a five-acre lot, and the payment of $16,000 in indebtedness, representing money borrowed from the wife and her son by a former marriage. The payments of tuition for a period of two years at the University of Tennessee were not to be affected by remarriage, nor were those involving distribution of household furnishings or payment of counsel fees.

There is no reference whatever to termination of petitioner's obligation to pay the life insurance premiums in the provisions now in dispute. The divorce decree is indefinite as to what type of life insurance was contemplated—that is, whether the husband was merely to provide term insurance, a whole life policy, or some combination thereof. There are no references to the insurance carrier, policy number, or any other specific data such as are frequently included in settlement agreements of this type. On its face, however, the agreement contemplated that the husband would make the wife the absolute owner of any life insurance covered by it, and seemingly he agreed to continue to pay the premiums thereon indefinitely.

It is undisputed that pursuant to this agreement the husband did transfer certain insurance policies to his wife and executed other documents which will be referred to hereafter. He paid the premiums on $30,000 of life insurance for the benefit of his former wife until her remarriage in August 1974. How the parties treated these premium payments for income tax purposes does not appear in the record.

Following remarriage of the wife, however, the husband ceased paying premiums, and she thereafter filed a petition for contempt, charging him with failure to comply with the provisions of the final decree. He

---

1. The provision with respect to life insurance as carried in the divorce decree differed from the allegations of the complaint only in a minor respect. In the last portion it called for delivery to the plaintiff of a "policy or policies" whereas the complaint had referred only to a single policy.

filed an answer and counterclaim, asserting that the remarriage of the wife terminated his obligation to pay the premiums and alleging that such payments "were in the nature of alimony." In the alternative, he prayed that the court modify the provisions of the decree and terminate his obligations with respect to life insurance, alleging that remarriage of the wife represented a material change in circumstances justifying such action. The wife answered this counterclaim, asserting that the provisions for life insurance were part of a property settlement which had been fully understood and agreed to by both parties.

The trial judge held an oral hearing on June 30, 1977. The parties testified generally in accordance with their pleadings. Both the husband and the attorney who represented him in the divorce action testified that the premium agreement was intended to guarantee to the wife a reasonable sum of alimony if the husband died. They insisted that premiums were provided only as security for such alimony, with the intention that any premium payments by the husband would terminate upon her remarriage. Both testified entirely without records.

The testimony revealed that the husband was an established physician with a substantial amount of life insurance in force, but he testified that most of it was encumbered by policy loans at the time of the divorce. He said that there had been no discussion between the parties as to the kinds of policies which he would make available to his wife. He testified, however, that he had some "term insurance" and that this was what he used in fulfilling the provisions of the divorce decree. He testified that he had a combination policy of hospitalization, disability and life insurance with the state medical association, which included $5000 of term life insurance with no cash surrender value. He transferred this to his wife, along with another $25,000 "term insurance" policy. He stated:

"Q. So actually neither policy had any cash surrender value at the time?

"A. Correct.

"Q. Did you have to obtain copies of these policies?

"A. Yes.

"Q. Had they been lost or misplaced?

"A. Yes they had.

"Q. And you obtained copies of those two policies from the companies and delivered them to your former wife, the plaintiff in this lawsuit?

"A. That is correct.

"Q. And you have kept those policies in force and effect until she remarried?

"A. That is right."

Had these been the facts, and had the husband only provided term life insurance having no cash surrender value, loan value or other ownership benefits, his insistence that the insurance was intended only as security for the periodic alimony payments would be strengthened. Later in the hearing, however, there were introduced a number of documents, which demonstrate that the foregoing testimony by Dr. Prince was materially erroneous, and which also shed some light upon his intentions and his understanding of his obligations under the divorce decree.

Apparently the insurance which he had with the state medical association was indeed group term insurance. The policy is not in the record. On May 12, 1972 Dr. Prince wrote to the managing agent for that group, requesting a change of beneficiary on the $5000 life insurance portion of this policy, designating respondent as the new beneficiary.

On the same date, however, he wrote to John Hancock Mutual Life Insurance Company with respect to policy No. 7134710, as follows:

"This is to inform you that I am requesting a change of beneficiary of the above policy from the Insured Estate to Mrs. Gloria June (Betty) Lyle, previously Gloria June Prince. She is also to become owner of this policy and upon receipt from you of the change of beneficiary, I will deliver the policy to her the face amount of the policy is $25,000. *I will*

*continue to pay the premiums."* (Emphasis added).

This letter was written one week after the entry of the divorce decree. It makes no reference whatever to any limited obligation on the part of the husband to pay premiums, nor does it advise the carrier that it should look to the wife for premium payments in the event of her remarriage.

Under date of May 26, 1972, Dr. Prince signed a change of beneficiary form. On the previous day he executed an absolute assignment of the policy, transferring it to the wife. On this form are printed directions with respect to premiums. Dr. Prince on that form expressly directed the company to *"Continue Current Premium Billing."* (Emphasis supplied). He mailed Mrs. Prince copies of his correspondence with the insurance carriers and sent her the John Hancock policy on May 12.

The policy with John Hancock was not by any means "term" insurance. It was a policy of whole life insurance, issued on October 15, 1959, in the amount of $25,000. It was unencumbered and, according to tables of values contained therein, had a cash surrender value on the date of its transfer to respondent in excess of $5,500. Premiums at that time could have been terminated leaving permanent paid-up insurance in excess of $10,000. In addition the policy contained a feature under which additional term insurance was to be purchased each year out of dividends, and any additional dividends were to be applied in reduction of premiums.

It is thus readily apparent that Dr. Prince transferred to his former wife not merely "term" insurance to provide a fund to substitute for monthly alimony if he died. She was given a whole life policy having substantial accrued value. He did not question that she was to become the absolute owner of this policy. The ownership transfer, of course, prevented his encumbering it or further changing the beneficiary and also gave her control of the cash and loan values.

Insofar as the record discloses, petitioner never advised either the carrier or his former wife that he was expecting to cease paying the premiums on this policy at any time prior to his death or until the policy matured without further premiums. He made no objection to the introduction of the policy and accompanying correspondence in evidence, nor did he take the stand after the policy had been introduced to explain or modify his previous testimony, part of which was quoted above.

From an examination of the record, therefore, we are in agreement with the Court of Appeals that more was intended in this case than the mere procuring of term life insurance on a temporary basis to insure payment of alimony in the event of premature death of the husband. The property settlement agreement appears to have been carefully negotiated by knowledgeable counsel and well-informed parties. It made no reference to the termination of insurance premiums upon remarriage of the wife, although there were careful provisions for termination of many of petitioner's other obligations in that event.

Both parties have cited cases from other jurisdictions, some holding that obligations of a husband with reference to life insurance premiums terminated upon remarriage of the wife,[2] and others holding to the contrary.[3] We do not find precedents to be of controlling value in the case, however, since the issue is primarily one of fact and of the intention of the parties. We are persuaded both by the terms of the agreement itself and by the preponderance of the oral testimony that the life insurance provisions incorporated into the final divorce decree were intended to be part of a property settlement or division of assets between these parties and were not intended merely to be temporary security for the payment of interim alimony.

Accordingly the judgment of the Court of Appeals is affirmed. The cause is remand-

2. *E. g., Maginnis v. Maginnis,* 323 Ill. 113, 153 N.E. 654 (1926); *Wiederanders v. Wiederanders,* 187 N.W.2d 74 (N.D.1971).

3. *Magarrell v. Magarrell,* 144 Colo. 228, 355 P.2d 946 (1960); *Lynch v. Lynch,* 67 Wash.2d 84, 406 P.2d 621 (1965).

ed to the trial court with directions to require petitioner to reinstate the policies at his expense, to obtain equivalent insurance, or, subject to court approval, to make other financial arrangements providing comparable benefits to the respondent. Because all parties apparently acted in good faith, we see no reason to hold petitioner in contempt or to impose any punitive sanctions upon him. All costs in the cause are taxed to petitioner.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.