# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 10, 2019 Session

## CHRISTY KELLER ELROD CHURCH v. DARRELL GENE ELROD

**Appeal from the Chancery Court for Williamson County**
**No. 28861     Deanna B. Johnson, Judge**

_____

### No. M2018-01064-COA-R3-CV
_____

In this post-divorce petition to modify, the Appellant (former Husband) contends that the trial court erred in concluding that his obligation to provide life insurance for the benefit of Appellee (former Wife) was part of a property settlement and therefore not subject to modification. The trial court's order included an upward deviation for support of the parties' youngest child for the twelve month period prior to her emancipation. The trial court also ordered Appellant to pay college tuition equal to that of the University of Tennessee at Knoxville without providing any allowance for scholarships and sponsor fees received by the parties' daughter. The trial court further found that Appellant was not guilty of civil contempt for failure to make payments into Appellee's retirement account under the terms of the parties' Agreed Order of Legal Separation (AOLS). However, the trial court refused to relieve Appellant of his obligation to continue funding Appellee's retirement account at the same level as he funds his own retirement account. We conclude from our review that the life insurance policy obligation constitutes spousal support, which is subject to modification. We vacate the trial court's judgment concerning college tuition and hold that Appellant is obligated to pay the cost of tuition and books, less scholarships and sponsor fees received by the parties' daughter. All other aspects of the trial court's order are affirmed. Accordingly, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in part, and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Craig H. Brent, Franklin, Tennessee, for the appellant, Darrell Gene Elrod.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Christy Keller Elrod Church.

## OPINION

## I. Background

On August 20, 2002, Darrell Gene Elrod ("Appellant") and Christy Keller Elrod Church ("Appellee"), entered into an Agreed Order of Legal Separation ("AOLS") that was prepared by Ms. Church's then-attorney. The relevant portions of the AOLS are as follows:

> A. The ( ) Wife (X) Husband will pay child support, in accordance with the Tennessee Child Support Guidelines, in the amount of $3,003.00 per month payable every two (2) weeks in the amount of $1,386.00, directly to the (X) Ms. Church.
>
> TOTAL AMOUNT OF CHILD SUPPORT: $3,003.00 per month based upon Husband's annual income of $111,000.00 per year.

The AOLS further provided:

> ORDERED, ADJUDGED and DECREED that Husband shall continue to maintain and keep current the life insurance policy on his life at Northwestern Mutual Life in the face amount of Seven Hundred Thousand ($700,000) Dollars, with such policy payable to the Wife for her use and benefit; and it is further
>
> ORDERED, ADJUDGED and DECREED that Husband shall continue to make the maximum contribution possible to his employer's, D.F. Chase, Inc., profit sharing plan during the legal separation; provided, however, that Wife shall be entitled to one-half (1/2) of the then balance of the profit sharing plan in the event that a Final Decree of Divorce is entered between the parties, and in the event that a Final Decree of Divorce is entered between the parties, a Qualified Domestic Relations Order shall be entered segregating Wife's fifty (50%) percent of the retirement account into a separate account in her name, with Husband being required thereafter to make equal contributions to Wife's separate retirement account as he makes his own retirement account or accounts through his employer or any subsequent employer until he reaches the age of sixty-five (65) years, and it is further
>
> ORDERED, ADJUDGED and DECREED that Husband shall and does agree to be contractually bound to pay college tuition and books for the parties' minor children for up to five (5) years of college for each or until

each child has reached the age of twenty-five (25) years, whichever occurs first, at a rate not to exceed that charged for in-state tuition at the University of Tennessee, Knoxville;

The parties did not reconcile after the entry of the AOLS, but were divorced by order of February 14, 2005. With regard to the AOLS, the Final Decree states in relevant part:

4.    The court found that the parties to the Agreed Order of Legal Separation intended that Order to be a final adjudication of their property rights and support obligations arising out of their marriage.

***

8.    The court found that there were no issues of division of assets, residential time, spousal or child support that had not been addressed in the Agreed Order of Legal Separation and Permanent Parenting Plan nor were there any issues that were not intended by the parties to be a final adjudication. The Agreed Order of Legal Separation specifically addressed what would occur if the parties divorced.

***

ORDERED, ADJUDGED and DECREED that the Wife's Motion to Dismiss Husband's divorce prayer for the Court to make an equitable division of the assets and liabilities of the marriage is granted, the Court having found that the parties Agreed Order of Legal Separation made a full and complete division of the parties' assets and liabilities at the time of the legal separation and made provisions in contemplation of a divorce and, thus, was a Final Order;

On May 29, 2015, Mr. Elrod filed a petition to modify his child support and other support obligations. By his petition, Mr. Elrod sought: (1) to terminate his child support obligation for the parties' three older children because they had emancipated;[1] (2) to have his child support obligation recalculated for Shelby, the youngest child, effective June of 2015; (3) to terminate his obligation to maintain certain life insurance policies including a $700,000 policy naming Ms. Church as the beneficiary; and (4) to terminate his obligation to fund a retirement account for Ms. Church.

On August 4, 2015, Ms. Church filed an answer and counter-petition for civil contempt. In relevant part, Ms. Church's answer denied that Mr. Elrod was entitled to termination of the $700,000 life insurance policy because the policy was in the nature of

_____

[1] Mr. Elrod did not seek modification when the first two children emancipated.

a property settlement. Ms. Church also argued that Mr. Elrod should be required to pay an upward deviation in child support to maintain Shelby's lifestyle. Ms. Church's counter-petition alleged that Mr. Elrod breached the divorce decree and the AOLS by failing to make contributions to Ms. Church's separate retirement account and by failing to pay the children's college tuition.

The trial in this matter was held on November 15, 2017. At the time of trial, Mr. Elrod was 61 years old and he had been employed as an Executive Vice President in charge of construction projects for D.F. Chase for approximately 31 years. His annual gross income in 2016 was $289,583, which was more than double his income of $111,000 at the time of the parties' divorce. Both Mr. Elrod and Ms. Church have remarried. Ms. Church and her new husband had an annual income of approximately $161,535 in 2016. Ms. Church contributed approximately $44,316 to this total.

By order of April 16, 2018, the trial court held that Mr. Elrod's child support obligation for Shelby would remain $3,003 per month from May 29, 2015 until her emancipation on July 5, 2016. The trial court's decision was based on Mr. Elrod's increased annual income, his limited parenting time, and his high standard of living, which under the Guidelines, Shelby was entitled to share in because of her Father's wealth. The trial court further held that the $700,000 life insurance policy was in the nature of a property settlement, or in the alternative was alimony *in solido* and, therefore, not modifiable. Consequently, the trial court held that Mr. Elrod was still obligated to maintain the $700,000 life insurance policy naming Ms. Church as the beneficiary. Although the divorce decree required Mr. Elrod to make equal contributions to Ms. Church's separate retirement account, the trial court found that he had "not contributed to his retirement account since the parties' divorce;" therefore, Mr. Elrod was not in contempt and was not obligated to fund Ms. Church's retirement account. The trial court, however, did not eliminate Mr. Elrod's obligation under the AOLS to fund Ms. Church's retirement account at a level commensurate with the funding of his own retirement account.

The trial court further held that Mr. Elrod was liable for payment of Shelby's tuition up to the amount of in-state tuition at University of Tennessee, Knoxville (UTK) without a credit for scholarships and sponsor fees received by Shelby. On its finding that "[t]here is nothing in the MDA (*sic*) that entitles [Mr. Elrod] to take credit for the scholarship or sponsor fee money," the trial court determined that "[t]here is no basis for the court to take these benefits into account in computing [Mr. Elrod's] obligation." Accordingly, the trial court awarded Ms. Church $12,724 for 2018-2019 and 2019-2020 and ordered Mr. Elrod to reimburse Ms. Church $24,346 for 2016-2018. The trial court also ordered Mr. Elrod to pay for Ms. Church's attorney fees. Mr. Elrod appeals.

## II.     Issues

- 4 -

The following issues are presented for appeal by Mr. Elrod:

1. Whether the trial court erred in characterizing Mr. Elrod's seven hundred thousand dollar ($700,000) term life insurance policy on himself with Ms. Church as beneficiary, as part of the division of the marital estate or, in the alternative, alimony *in solido*, and ordering that he shall continue to maintain said policy on himself with Ms. Church as beneficiary.

2. Whether the trial court erred in awarding an upward deviation in Mr. Elrod's monthly child support obligation.

3. Whether the trial court erred in failing to credit against Mr. Elrod's obligation for the minor children's college tuition and books, the scholarships, grants, stipends, and other cost reducing programs received by or on behalf of the parties' children for college tuition.

4. Whether the trial court erred in failing to find the Agreed Order of Legal Separation ambiguous.

5. Whether the trial court erred in characterizing Mr. Elrod's obligation to make equal contributions to Ms. Church's separate retirement account as he make to his own retirement account until he reaches the age of sixty-five as a contractual obligation.

6. Mr. Elrod requests that this Court award him his attorney's fees and expenses (or remand the case to the trial court for this trial court to do so) for the prosecution of this Appeal to the extent permitted by law.

In the posture of Appellee, Ms. Church presents the following issues on appeal:

7. Whether Mr. Elrod breached his duty of good faith and fair dealing in failing to fund his retirement plan in order to deprive the Ms. Church of equal contributions as required under the agreed order of legal separation.

8. Ms. Church also asks for her attorneys' fees on appeal.

### III. Standard of Review

Because this case was tried by the trial court, sitting without a jury, our review of the trial court's factual findings is *de novo* upon the record, accompanied by a

presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); **Kendrick v. Shoemake**, 90 S.W.3d 566, 570 (Tenn. 2002); **Hass v. Knighton**, 676 S.W.2d 554, 555 (Tenn. 1984). To preponderate against the trial court's findings of fact, the evidence "must support another finding of fact with greater convincing effect." **4215 Harding Road Homeowners Ass'n v. Harris**, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011). We review the trial court's resolution of questions of law *de novo*, with no presumption of correctness. **Kendrick**, 90 S.W.3d at 569.

## IV.    Analysis

### A.    $700,000 Life Insurance Policy

The trial court characterized Mr. Elrod's obligation concerning the $700,000 life insurance policy as part of the division of the marital estate, or in the alternative as alimony *in solido*, and ordered Mr. Elrod to continue maintaining the policy with Ms. Church as beneficiary. Mr. Elrod contends that his obligation to provide the life insurance policy was in the nature of long term support to secure payment of his obligations outlined in the AOLS and, as such, the trial court has authority to terminate this obligation.

After a divorce decree becomes final, a marital dissolution agreement becomes merged into the decree as to matters of child support and alimony, and the trial court has continuing statutory power to modify the decree as to those matters when justified by changed circumstances. **Penland v. Penland**, 521 S.W.2d 222, 224 (Tenn. 1975). To the extent that a marital dissolution agreement is an agreement as to distribution of marital property, it does not lose its contractual nature by merger into the decree of divorce and is not subject to later modification by the court. **Hannahan v. Hannahan**, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007) (citing **Towner v. Towner**, 858 S.W.2d 888 (Tenn. 1993)).

[I]t is not uncommon for property settlements to provide that a husband maintain life insurance for the benefit of his wife indefinitely and that he pay the premiums until policy maturity or until his death. The insurance proceeds may, and frequently do, comprise a major portion of an overall or lump-sum division of assets between the parties. **Prince v. Prince**, 572 S.W.2d 908, 909 (Tenn. 1978); **Siletchnik v. Siletchnik**, No. 01-A-019103CH00110, 1991 WL 164382, at *4 (Tenn. Ct. App. Aug. 28, 1991). The problem is primarily one of draftsmanship and of the intention of the parties.

The trial court cites the case of **Prince v. Prince**, 572 S.W.2d 908 (Tenn. 1978) to support its finding that the life insurance policy here is in the nature of a property settlement. In **Prince**, the Tennessee Supreme Court concluded that the life insurance provisions incorporated into the final divorce decree were intended to be part of a property settlement or division of assets between these parties and were not intended

- 6 -

merely to be temporary security for the payment of interim alimony. *Id.* at 912. In that case, the language in the property settlement stated that the life insurance policy "is to be the absolute property of the [Wife] with no strings attached, and [Husband] is to continue paying the premiums on said life insurance policy." *Id.* at 909.

Unlike the current case, one of the life insurance policies in the ***Prince*** case was a whole life insurance policy with a substantial cash surrender value. ***Prince***, 572 S.W. 2d at 912. Here, the policy in question is a term life insurance policy with no cash value. In ***Prince***, the Tennessee Supreme Court acknowledged that had the Husband only provided term life insurance having no cash value or other benefits, "his insistence that the insurance was intended only as security for . . . alimony payments would be strengthened." *Id*. at 911. Mr. Elrod testified at trial that the term policy obligation was for Ms. Church's use and benefit to secure his support obligations under the AOLS. His obligations included college expenses for Ms. Church, COBRA payments for Ms. Church, home mortgage payments, child support, health insurance for the children, and college expenses for up to five years for each of the parties' four children.

In rejecting Mr. Elrod's contention that the term life insurance obligation was to secure the obligations outlined above, the trial court reasoned that the plain language of the AOLS does not mention "support." This is true. Likewise, the terms "property division" and "property settlement" are not mentioned in the AOLS. The AOLS does not refer to the life insurance obligation as part of the parties' property division or division of marital assets. In fact, other than the agreed order, there is no separate written property settlement agreement between the parties in this case. As such, from the language in the AOLS, we cannot conclude that the life insurance obligation was intended to be part of a property settlement as opposed to support to secure Mr. Elrod's various financial obligation under the AOLS. We now turn to address whether the life insurance obligation was in the nature of alimony *in solido* as found by the trial court.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony *in futuro*, and alimony *in solido*. Tenn. Code Ann. § 36-5-121(d)(1). Each type of alimony addresses a specific need. Alimony *in futuro* and alimony *in solido* are the two forms of "long term or more open-ended support." ***Burlew v. Burlew***, 40 S.W.3d 465, 471 (Tenn. 2001) (citing ***Waddey v. Waddey***, 6 S.W.3d 230, 232 (Tenn. 1999)). "Whether alimony is *in futuro* or *in solido* is determined by either the definiteness [*in solido*] or indefiniteness [*in futuro*] of the sum of alimony ordered to be paid at the time of the award." ***Waddey v. Waddey***, 6 S.W.3d 230, 232 (Tenn. 1999) (citing ***McKee v. McKee***, 655 S.W.2d 164, 165 (Tenn. Ct. App. 1983)). Alimony *in solido* is an award of a definite sum of alimony and "may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded." ***Burlew***, 40 S.W.3d at 471. Typically, the purpose of such an award is to adjust the distribution of the parties' marital property. *Id.* As such, alimony *in solido* is generally not modifiable and does not

terminate upon death or remarriage. Tenn. Code. Ann. § 36-5-121(h)(2)-(3); *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 108 (Tenn. 2011).

"Alimony *in futuro,* however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." *Waddey,* 6 S.W.3d at 232. Unlike alimony *in solido,* an award of alimony *in futuro* is subject to modification, and its duration may be affected by contingencies agreed upon by the parties or imposed by courts. *Id.* at 232-33. An award of alimony *in futuro* "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification of the alimony award "bears the burden of proving that a substantial and material change in circumstances has occurred." *Wiser v. Wiser,* 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010) (citing *Freeman v. Freeman,* 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)).

By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training necessary to become self-reliant following a divorce. *Gonsewski,* 350 S.W.3d at 109. Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id.*; *Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382, at *2 (Tenn. Ct. App. May 23, 2014). Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony *in futuro* or *in solido. See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Parrish v. Parrish*, No. W2013-00316-COA-R3CV, 2013 WL 3203352, at *5-6 (Tenn. Ct. App. June 21, 2013) (citing *Gonsewski,* 350 S.W.3d at 109).

Here, the trial court's order states in pertinent part:

Assuming, arguendo, that maintenance of the $700,000 life insurance policy is a form of "support" instead of a property settlement, then the court finds it to be alimony *in solido* of a definite amount, which is not modifiable. . . .

The face value of the Northwestern Mutual life insurance policy is fixed at $700,000, payable upon Husband's death. (ex. 11). It is a definite sum to be paid at the time of the award. Alimony *in solido* is not modifiable even upon a showing of changed circumstances, including such events as remarriage or the increased fortunes of the recipient spouse. *Bryan v. Leach*, 85 S.W.3d 136, 145-46 (Tenn. Ct. App. 2001) (citing *Self v. Self*, 861 S.W. 2d 360, 362 (Tenn. 1993); *Towner*, 858 S.W.2d at 890.

[Mr. Elrod] cannot modify his bargain, whether it is a property settlement or alimony *in solido*. . . . For all of these reasons, [Mr. Elrod's] request that

the court modify the requirement that [Mr. Elrod] maintain and keep current the life insurance policy on his life in the amount of $700,000 is, respectfully, denied.

Mr. Elrod argues that the insurance policy cannot be defined as alimony *in solido* because the life insurance policy "contains contingencies and conditions that render the total obligation of support indefinite." Tennessee Code Annotated section 36-5-121(h)(1) defines alimony *in solido* as

> [L]ump sum alimony . . . a form of long term support, the total amount of which is calculable on the date the decree is entered, but which is not designated as transitional alimony. Alimony *in solido* may be paid in installments; provided, that the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded.

Tenn. Code Ann. § 36-5-121(h)(1). For a payment to be considered alimony *in solido*, the statute requires that the amount of alimony to be paid be ascertainable at the time of the award and that the payments be made over a definite period of time. Mr. Elrod's obligation to maintain a $700,000 life insurance policy has no definite end date. Furthermore, the amount he is obligated to pay in premiums is not ascertainable now, nor when ordered as insurance rates fluctuate according to age and overall physical health. Moreover, depending on Mr. Elrod's health, the premiums for such a large policy could reach a level that payment of the premium is not sustainable in the future. For these reasons, we conclude that the $700,000 life insurance policy maintained by Mr. Elrod cannot be classified as alimony *in solido* and must therefore fall into the category of alimony *in futuro,* which may be modified or terminated. Under the facts here involving a term life insurance policy and no written agreement designating the life insurance obligation as part of a property division, we hold that the life insurance policy was meant to secure Mr. Elrod's obligations under the AOLS in the event of his early death leaving his wife and children without his support. Inasmuch as Mr. Elrod's obligation for his children's college education expenses have not been satisfied, we decline to relieve him of his obligation to maintain the life insurance policy at this time.

## B.    Child Support

At the time of the divorce, the parties had four minor children. Under the parenting plan, Mr. Elrod paid $3,003 per month for the support of all four children. On May 29, 2015, after the three of his children had reached majority, Mr. Elrod filed a petition to modify his child support among other things. Specifically, Mr. Elrod sought to terminate his child support obligation for the three emancipated children and to recalculate his child support obligation for Shelby, the only remaining minor child. In response, Ms. Church argued that Mr. Elrod's child support should not be modified

because a reduction in child support would be a hardship for Shelby and make it impossible for her to pay all of Shelby's expenses. Ms. Church testified that she paid for all of Shelby's art expenses and clothes, as well as her car and car insurance, vacations and entertainment for Shelby. Additionally, she paid $3,000 to the Savannah School of Art and Design for Shelby's two week summer camp and all of Shelby's extra expenses for her senior year including college application fees.

With regard to child support, the trial court determined that:

[A] deviation is applicable in this case pursuant to Tenn. Comp. R. & Regs. 1240-2-4.01(4), which provides that "these Guidelines are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of this chapter."

In the instant case, Shelby's best interests as well as the circumstances of the parties lead the Court to conclude that [Mr. Elrod]'s child support obligation should be $3,003 per month during the relevant time period of May 29, 2015 through July 5, 2016.

The criteria for ascertaining a parent's child support obligation is governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services, in accordance with Tennessee Code Annotated section 36-5-101(e). The law set out in *Reeder v. Reeder*, 375 S.W.3d 268, 275-76 (Tenn. Ct. App. 2012) is applicable here.

The amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive child support. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). The presumptive amount of support, however, is rebuttable, Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-02-04-.01(1)(d)(1); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005), and a trial court may, in its discretion, deviate from the amount of support required by the Child Support Guidelines. *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996). When a trial court deviates from the Guidelines, the court is required to specifically state in written findings why the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp R. & Regs. 1240-02-04-.07(1)(b). Although the trial courts retain an element of discretion to deviate from the presumptive amounts, such discretionary decisions must take into consideration the applicable law and the relevant facts. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996).

- 10 -

We review such discretionary decisions pursuant to a review-constraining standard. *Richardson,* 189 S.W.3d at 725 (citing *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999)). We do not have the latitude to substitute our judgment for that of the trial court. *Id.* (citing *Henry v. Goins,* 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). To the contrary, a trial court's discretionary decision to deviate from the Guidelines will be upheld as long as the trial court applied a correct legal standard, *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003), the decision is not clearly unreasonable, *Bogan v. Bogan,* 60 S.W.3d 721, 730 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001).

*Reeder,* 375 S.W. 3d at 275-76.

Tennessee Code Annotated section 36-5-101(e)(1)(B) states that "if the net income of the obligor exceeds ten thousand dollars ($10,000.00) per month, then the custodial parent must prove, by a preponderance of the evidence, that child support in excess of the amount provided for in the child support guidelines is reasonably necessary to provide for the needs of the minor child . . . ." Tenn. Code Ann. § 36-5-101(e)(1)(B). In making its determination, the court must consider all available income of the obligor and make a specific finding that the deviation is reasonably necessary. *Id.*; Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(g). Here, there is no dispute that the presumptive child support amount is $2,031.00 per month. In reaching its decision, the trial court noted Mr. Elrod's high standard of living including the fact that Mr. Elrod and his current wife maintain two homes and travel back and forth between homes in Michigan and Tennessee. The trial court also found that his annual income had increased from $111,000 at the time of the divorce to $289,000 and that Mr. Elrod had already paid $3,003 per month during the months at issue while still supporting his new wife and her three children, including payment of his step-children's private school expenses. Further, the trial court noted all of the expenses that Ms. Church paid for Shelby including tuition for summer camp at Savannah School of Art and Design and all of the extra expenses for senior year including college application fees. Tennessee imposes a legal obligation on parents to support their minor children in a manner commensurate with their own means and station in life. *Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *6 (Tenn. Ct. App. Nov. 6, 2008); *Richardson v. Spanos,* 189 S.W.3d 720, 724 (Tenn. Ct. App. 2005); Tenn. Code Ann. § 34-1-102(a) (2001); *Wade v. Wade,* 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002)). Taking the applicable law into account, the trial court determined that an upward deviation of $972.00, for a limited period of time, was supported by the facts and was in Shelby's best interest.

One of the major goals of the Guidelines is to "[e]nsure that, when parents live separately, the economic impact on the child is minimized, and, to the extent that either parent enjoys a higher standard of living, the child shares in that higher standard." Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(e). *See Stack v. Stack*, No. M2014-02439-COA-R3-CV, 2016 WL 4186839, at *12 (Tenn. Ct. App. Aug. 4, 2016) (affirming an upward deviation noting Father's high standard of living and determining that the deviation was reasonably necessary."); *Wiser v. Wiser*, 339 S.W.3d 1, 19-20 (Tenn. Ct. App. 2010) (acknowledging the goal of the Guidelines to "ensure that the children fully share the standard of living enjoyed by the parent with the most financial resources."); *State ex rel. Middleton v. Cochran*, No. E2002-00164-COA-R3-JV, 2002 WL 31059286, at *5 (Tenn. Ct. App. Sept. 17, 2002) (finding upward deviation appropriate when one parent had substantially higher income than the other); *Cunningham v. Cunningham*, No. W1999-02054-COA-R3-CV, 2000 WL 33191364, at *7 (Tenn. Ct. App. Oct. 20, 2000) (approving upward deviation in light of goal of the Guidelines to ensure child shares in parent's high standard of living). In light of the additional expenses for Shelby's needs, all of which have been paid by Ms. Church, and Mr. Elrod's limited parenting time and affluent lifestyle, we find that the trial court did not abuse its discretion in making the upward deviation ordered. The trial court considered Mr. Elrod's available income and the goals of the Guidelines in its determination that an upward deviation was reasonably necessary in this case. Accordingly, we conclude that the trial court appropriately exercised its discretion to deviate from the presumptive child support amount under the Guidelines.

## C.    College Tuition

The AOLS obligated Mr. Elrod to pay for Shelby's college tuition and books "at a rate not to exceed that charged for in-state tuition at the University of Tennessee, Knoxville." Mr. Elrod argues that the trial court erred in failing to deduct from Mr. Elrod's obligation certain scholarships, sponsor fees and other cost reducing programs received by or on behalf of Shelby. As previously explained by this Court:

> While it is generally true that a parent cannot be ordered by the courts to pay child support for an adult child, *Blackburn v. Blackburn,* 526 S.W.2d 463, 465 (Tenn. 1975); *Garey v. Garey,* 482 S.W.2d 133, 135 (Tenn. 1972), a party to a divorce may by agreement obligate himself or herself beyond the support duties imposed by law. Such a provision in an agreement constitutes "a contractual obligation outside the scope of the legal duty of support during minority and retains its contractual nature, although incorporated in a final decree of divorce." *Penland v. Penland,* 521 S.W.2d 222, 224-25 (Tenn. 1975); *Blackburn*, 526 S.W.2d at 465. Any voluntarily assumed obligation exceeding the minimum child support required by statute is based on the parties' contract, enforceable as a contractual obligation, and controlled exclusively by the agreement. *Haas v. Haas,*

- 12 -

No. 02A01-9604-CV-00073, 1997 WL 194852, at *3 (Tenn. Ct. App. Apr. 22, 1997) (no Tenn. R. App. R. 11 application filed).

**Powers v. Powers**, No. W2012-01763-COA-R3CV, 2013 WL 1804188, at *4 (Tenn. Ct. App. Apr. 30, 2013) (quoting **Bryan v. Leach**, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001)).

"The interpretation of a written agreement is a matter of law and not of fact; therefore, our scope of review is *de novo* upon the record with no presumption of correctness of the trial court's conclusions of law." **Clear Channel Outdoor, Inc. v. A Quality, Inc.**, 250 S.W.3d 860, 863 (Tenn. Ct. App. 2007); **NSA DBA Benefit Plan v. Connecticut Gen. Life Ins. Co.**, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997); **Rainey v. Stansell**, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). Our task is to review the contract anew and make our own independent determination of the agreement's meaning. **Pylant v. Spivey**, 174 S.W.3d 143, 150 (Tenn. Ct. App. 2003); **Hillsboro Plaza Enterprises v. Moon**, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

With regard to college tuition, the AOLS states as follows:

ORDERED, ADJUDGED and DECREED that Husband shall and does agree to be contractually bound to pay college tuition and books for the parties' minor children for up to five (5) years of college for each or until each child has reached the age of twenty-five (25) years, whichever occurs first, at a rate not to exceed that charged for in-state tuition at the University of Tennessee, Knoxville;

In-state tuition for the 2016-2017 academic school year at UTK is $12,724.00 Shelby attends Indiana University-Perdue University Indianapolis (IUPUI) where the cost of her attendance is approximately $44,061.41 per year. In addition to tuition, this amount includes a full meal plan, housing, and all manner of fees including placement fees, lab fees, parking permits etc. For the 2016-2017 school year, Shelby received $27,515.76 in scholarships and sponsor fees, which is credited to the total cost of her attendance. In calculating what he owed for Shelby's college expenses, Mr. Elrod deducted Shelby's scholarships and sponsor fees, leaving a total of $1,211.00 remaining in tuition costs. The trial court found that

Husband has paid $1,102 toward Shelby's college tuition. Husband used Shelby's scholarship funds and the University Sponsor Fee Credit for the 2016-2017 and Fall 2017 semesters to offset his tuition payment obligation and thus shifted the majority of the costs of Shelby's college expenses to the child and [Ms. Church].

In **Bowling v Bowling**, No. E2004-01219-COA-R3-CV, 2005 WL 336913 (Tenn.

- 13 -

Ct. App. Feb. 14, 2005), the parties' daughter attended college where the mother worked. The father in **Bowling** asserted that it was error for the trial court to refuse to give him the benefit of the tuition credit the mother received from her employer. In that case, the contract stated that the father was to pay one-half of his daughter's college expenses, and did not mention employment benefits. This Court held that "[t]here is no basis for the Court to take these benefits into account in computing the father's obligation. The fact that the mother receives such a benefit and may have voluntarily allowed the father to share the same in the past, does not affect the father's contractual obligation." *Id*. at *3. Here, the trial court relied on the **Bowling** case to reach its conclusion that "[t]here is no basis for the court to take these benefits into account in computing [Husband's] obligation." Accordingly, the trial court ordered that

> [Mr. Elrod] shall be responsible for $12,724 of Shelby's college tuition for the 2018-2019 and $12,724 for the 2019-2020 school years, or whatever the in-state tuition is for the University of Tennessee Knoxville. In addition, [Mr. Elrod] shall reimburse [Ms. Church] $24,346 for Shelby's college expenses for the 2016-2017 and 2017-2018 school years thus far.

The trial court also cited the case of **Lopez v. Taylor**, 195 S.W.3d 627, 633-34 (Tenn. Ct. App. 2005) in support of its opinion. In **Lopez**, both parents agreed to "equally pay the children's college education including tuition, books, school dues and room and board while they attend college." **Id.** The parties' older son became eligible for a substantial tuition discount when Father became employed by the university where son was enrolled. Father and son conspired to withhold this information regarding Father's employment and the tuition discount from Mother so that she would continue to pay tuition that was not owed. Due to the fraud perpetrated against her, this Court held that Mother was no longer obligated to pay for son's college expenses. **Id**. Importantly, the Court in **Lopez** concluded that the parties' agreement for each to pay one-half of their children's college expenses, contractually obligated each to pay one-half of the expenses actually incurred. **Lopez**, 195 S.W. 3d at 633-34. This holding in **Lopez** is in line with our holding in **Cooper v. Cooper**, No. W1999-01450-COA-R3-CV, 2001 WL 29459, (Tenn. Ct. App. Jan. 10, 2001).

In **Cooper**, Husband agreed that he "shall pay for Patrick's college or education needed after high school." **Cooper**, 2001 WL 29459, at *1. After determining exactly which expenses Husband was obligated to pay, this Court held that "Mr. Cooper is liable for the cost of tuition, fees, books, and the dormitory costs for room and board, *less grants and scholarships received by Patrick.*" **Id**. at *5 (emphasis added). Although there are not many Tennessee cases on this issue, cases from nearby states support the reasoning of **Cooper** and **Lopez**. In **Norrell v. Norrell**, 225 S.E.2d 305 (Ga. 1976), the Supreme Court of Georgia interpreted a divorce decree requiring the father to "pay tuition for the children as they reach college age or tuition in any other school which they may enter." **Id**. at 306. The evidence in **Norrell** showed that the parties' son attended the

Julliard School of Music, which had an annual tuition of $2,690.00. The trial court required the father to pay this entire amount, despite the fact that the son received an $800.00 scholarship that was applied to his tuition. The Supreme Court of Georgia held that the language of the divorce decree only obligated the father to pay the net tuition and remanded the case to the trial court with instructions to allow the father a credit for the $800.00 scholarship. *Id.* The Missouri Court of Appeals has also decided a similar issue, stating that "any court order for the payment of educational expenses should properly be based on actual out-of-pocket costs to the student." ***Panettiere v. Panettiere***, 945 S.W.2d 533, 539-540 (Mo. Ct. App. 1997).

Here, Shelby has received certain scholarships and credits meant to reduce her cost of attendance. The IUPUI Scholarship Statement of Rights and Responsibilities entered into evidence states that "[i]f the balance on your bursar account is paid in full . . . any remaining scholarship monies will be refunded to you. . . ." Under the AOLS, Mr. Elrod is not obligated to pay for Shelby's college expenses other than books and a portion of tuition. Therefore, based on our decisions in ***Cooper*** and ***Lopez***, we hold that Mr. Elrod is liable for the cost of tuition and books, less scholarships and sponsor fees received by Shelby. The issue then becomes a question of how to apply the scholarship and credits. Other than a small housing stipend received during the 2016-17 school year, none of the scholarships or other credits are specifically designated for a particular cost. To the contrary, it appears that all educational expenses are totaled, and all financial aid is then subtracted from that total. Absent evidence of an actual designation of financial aid awards for application to tuition expenses, we cannot generally presume such awards were so designated. Thus, under the unique circumstances of this case, the scholarships and sponsor fees received by Shelby shall be spread across the cost of Shelby's tuition, books, fees, and room and board owed to the university. The financial transcript from IUPUI indicates that the cost of Shelby's attendance for the 2016-2017 school year is $44,061.41. She received $27,515.76 in scholarships and sponsor fees, leaving a balance of $16,545.65 owed to IUPUI. When you subtract Mr. Elrod's $12,724.00 tuition obligation from the balance, a balance of $3,821.65 remains. This balance is the responsibility of Shelby and Ms. Church. The cost of Shelby's attendance at IUPUI for the fall semester of 2017 is $16,225.49. Shelby received $15,072.30 in scholarships and sponsor fees leaving a balance of $1,170.69 owed to IUPUI. As there is no evidence of any other costs owed to IUPUI, Mr. Elrod is only obligated to pay $1,170.69 for the 2017 fall semester. Accordingly, if the balance owed to the university for Shelby's tuition, fees, books, and room and board after all credits for scholarships and sponsor fees is more than $12,724.00, Mr. Elrod is obligated to pay the full $12,724.00. If the balance owed by Shelby after all credits is less than $12,724.00, Mr. Elrod is only obligated to pay the lower amount. Accordingly, we vacate the trial court's order requiring Mr. Elrod to reimburse Ms. Church $24,346.00 for the 2016-17 and 2017-18 school years and ordering him to pay the full amount of in-state tuition for UTK for the 2018-19 and 2019-20 school years. We remand the matter to the trial court with instructions to determine Mr. Elrod's actual obligation for Shelby for each school year in question giving him

credit for scholarships, sponsor fees, and other cost reducing programs received by Shelby.

### D.     Retirement Plan

Mr. Elrod argues that the trial court erred in characterizing his obligation to make equal contributions to Ms. Church's separate retirement account as a contractual obligation. With regard to the parties' retirement accounts after divorce, the AOLS states:

> [I]n the event that a Final Decree of Divorce is entered between the parties, a Qualified Domestic Relations Order shall be entered segregating Ms. Church's fifty (50%) percent of the retirement account into a separate account in her name, with Husband being required thereafter to make equal contributions to Ms. Church's separate retirement account as he makes his own retirement account or accounts through his employer or any subsequent employer until he reaches the age of sixty-five (65) years[.]

Mr. Elrod argues that the obligation to contribute to Ms. Church's retirement plan is in the nature of support and should be considered alimony *in futuro,* making the obligation modifiable. Mr. Elrod further argues that the "obligation contains contingencies, lacks certainty and is incapable of definite calculation." The trial court's order states in pertinent part:

> Husband requests that the court allow Husband to terminate his obligation to fund a separate retirement account for Ms. Church. In her pleading, Ms. Church seeks to have Husband held in contempt of court for his failure to fund her retirement account. Both parties' requests in this regard are denied. As for Husband's request, he agreed to this provision. He cannot back out of the agreement now . . . .
>
> As for Ms. Church's request, it is denied because the MDA [*sic*] requires Husband to make equal contributions to Ms. Church's separate retirement account as Husband "makes to his own retirement account or accounts through his employer or any subsequent employer . . ." The proof at trial was that Husband does not and has not contributed to his retirement account since the parties' divorce. Thus, Husband is not in breach of the contract and he is not in contempt of court.

It is well settled under Tennessee law that "only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce." ***Penland v. Penland***, 521

S.W.2d 222, 224 (Tenn. 1975) (emphasis supplied); see also **Blackburn v. Blackburn**, 526 S.W.2d 463, 465 (Tenn. 1975). The reason for stripping the agreement of its contractual nature "'is the continuing statutory power of the Court to modify its terms when changed circumstances justify.'" **Towner v. Towner**, 858 S.W.2d 888, 890 (Tenn. 1993) (quoting **Penland**, 521 S.W.2d at 224). However, voluntarily assumed obligations outside the scope of a Court's statutory power to modify are enforceable as a contractual obligation and are controlled exclusively by the agreement. **Penland**, at 224; **Bryan v. Leach**, 85 S.W.3d 136, 151- 152 (Tenn. Ct. App. 2001). Similarly, agreements to make monthly payments pursuant to a property settlement agreement do not lose their contractual nature by merger into the decree of divorce and are not subject to later modification by the Court. **Towner**, 858 S.W.2d at 888; **Hannahan v. Hannahan**, 247 S.W.3d 625 (Tenn. Ct. App. 2007). If the agreement did not merge into the final decree of divorce and lose its contractual nature, then any subsequent modification of the obligation by the trial court would violate the constitutional prohibition against the impairment of contractual obligations. **Blackburn**, 526 S.W.2d at 465 (citing Tenn. Const. art. I, § 20). *See* **Eberbach v. Eberbach**, 535 S.W.3d 467, 474 (Tenn. 2017) (concluding that on issues other than child support during minority and alimony, the MDA retains its contractual nature). *See also* **Towner**, 858 S.W.2d at 890; **Yarbro**, 1999 WL 1097983, at *4. Here, Mr. Elrod agreed to fund Ms. Church's retirement account at a level commensurate with his own until he reached the age of 65. The terms of the AOLS in this regard are clear and finite. We conclude the trial court correctly ruled that the parties' agreement concerning retirement accounts was contractual in nature. Mr. Elrod has not presented any argument that persuades us otherwise.

Concerning the issue of the retirement account, Ms. Church argues that Mr. Elrod breached his duty of good faith and fair dealing in failing to fund his retirement plan in order to deprive her of equal contributions as required under the AOLS. Ms. Church argues that "[t]he parties agreed that [Mr. Elrod] would make the maximum contribution possible to his retirement savings and an equal amount to [Ms. Church]'s retirement account." A fair reading of the AOLS, however, reveals this argument has no merit. The AOLS states that upon entry of a Final Decree of Divorce and a Qualified Domestic Relations Order (QDRO), Mr. Elrod shall be required thereafter "to make equal contributions to [Ms. Church]'s separate retirement account as he makes his own retirement account or accounts through his employer or any subsequent employer until he reaches the age of sixty-five (65) years." While it is undisputed that Mr. Elrod has not contributed any funds to Ms. Church's retirement account since the divorce, it is also undisputed that Mr. Elrod has not contributed any funds to his own retirement account since the divorce. Therefore, Mr. Elrod has complied with his obligation under the retirement provision in the AOLS. Ms. Church has received exactly that for which she bargained. As such, Mr. Elrod has not breached his duty of good faith and fair dealing.

### E.     Attorneys' Fees on Appeal

Both parties have requested that this Court award attorneys' fees on appeal. Litigants must typically pay their own attorneys' fees absent a statute or agreement providing otherwise. *See* **State v. Brown & Williamson Tobacco Corp.**, 18 S.W.3d 186, 194 (Tenn. 2000). An award of appellate attorney fees is a matter that is within this Court's sound discretion. **Archer v. Archer,** 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Neither party has alleged that the appeal of the other is frivolous or "utterly devoid of merit." **Combustion Eng'g, Inc. v. Kennedy,** 562 S.W.2d 202, 205 (Tenn. 1978). In considering a request for attorney fees on appeal, we consider the ability of the party seeking the fee award to pay such fees, his or her success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. **Darvarmanesh v. Gharacholou,** No. M2004-00262-COA-R3-CV, 2005 WL 1684050 at *16 (Tenn. Ct. App. July 19, 2005). Considering all of the relevant factors, we respectfully decline to exercise our discretion to award attorneys' fees to either party in this appeal.

## V.     Conclusion

For the foregoing reasons, we reverse the trial court's finding that the $700,000.00 term life insurance obligation was not modifiable, but affirm the decision not to terminate the obligation at this time. We vacate the trial court's order requiring Mr. Elrod to reimburse Ms. Church $24,346.00 for the 2016-17 and 2017-18 school years and ordering him to pay the full amount of in-state tuition for UTK for the 2018-19 and 2019-20 school years. We remand the matter to the trial court with instructions to determine Mr. Elrod's actual obligation for Shelby for each school year in question giving him credit for scholarships, sponsor fees, and other cost reducing programs received by Shelby. We affirm the trial court's decision with regard to the upward deviation of child support. We affirm the trial court's order regarding the funding of Ms. Church's retirement account. We respectfully deny the parties' request for attorneys' fees and expenses on appeal and remand for further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed equally against the parties, and their sureties, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE